Frank J. KELLEY, Attorney General of the State of Michigan, ex rel., MICHIGAN NATURAL RESOURCES COMMISSION, Michigan Water Resources Commission, and Gordon E. Guyer, Director of the Michigan Department of Natural Resources, Plaintiffs,

v.

ARCO INDUSTRIES CORPORATION, Frederick C. Matthaei, Jr., and Robert P. Ferguson, Defendants,

and

ARCO INDUSTRIES CORPORATION, Third–Party Plaintiff,

v.

NORTHWEST COATINGS CORP., a Wisconsin corporation; General Latex and Chemical Corporation, an Ohio corporation; E.I. Dupont De Nemours and Company, a Delaware corporation; The Village of Schoolcraft, a Michigan municipal corporation; Drake's Fuel Service, Inc., a Michigan corporation; John A. Biewer Company, Inc., a Michigan corporation; Bar–Mo Metalcrafters, Inc., a Michigan corporation; Quality Films, Inc., a Michigan corporation; Grand Trunk Western Railroad Company, a Michigan corporation; Weiss Trucking Company, Inc., an Indiana corporation; Grand Rapids Sash and Door Company, a Michigan corporation; G–H Detroit Holdings Company (formerly Peerless Cement Company), a Delaware corporation, Third–Party Defendants.

No. K87–372 CA4.

United States District Court, W.D. Michigan.

Jan. 18, 1990.

See also, 723 F.Supp. 1214.

John F. Magyar, Magyar & Swisher, Dowagiac, Mich., James B. Ford, Zarbock & Ford, Robert A. Soltis, Ford & Kriekard, PC, Kalamazoo, Mich., Larry D. VanderWal, Linsey, Strain & Worsfold, Grand Rapids, Mich., Steven C. Kohl, Landman, Latimer, Clink & Robb, Muskegon, Mich., Douglas S. Touma, Touma, Watson, Whaling, Coury, et al., Port Huron, Mich., Randall S. Schau, Gemrich, Moser, Bowser, Fette, et al., Alfred J. Gemrich, Gemrich, Moser, Bowser, Fette, et al., Kalamazoo, Mich., Mary P. Sclawy, Grand Trunk Western R. Co., Law Dept., Laurence M. Scoville, Jr., Clark, Klein & Beaumont, Richard C. Marsh, Clark, Klein & Beaumont, Detroit, Mich., Gary A. Rowe, Smith, Haughey, Rice & Roegge, P.C., Douglas E. Wagner, Warner, Norcross & Judd, Grand Rapids, Mich., Drew F. Seaman, Carol J. Wilson, Straub, Seaman & Allan, P.C., St. Joseph, Mich., for third-party defendants.

## OPINION

ENSLEN, District Judge.

Stanley F. Pruss, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Environmental Protection Div., Lansing, Mich., for plaintiffs.

Joy Shawl Witte, Plunkett & Cooney, Lansing, Mich., Jay E. Brant, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Charles M. Denton, Varnum, Riddering, Schmidt & Howlett, Jon R. Muth, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for defendants.

Sidney D. Durham, Butler, Durham & Svikis, Parchment, Mich., Jay E. Brant, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Robert A. Soltis, Ford & Kriekard, P.C., Kalamazoo, Mich., Donald R. Worsfold, Linsey, Strain & Worsfold, Larry D. VanderWal, Grand Rapids, Mich., for third-party plaintiff.

J. Richardson Johnson, Early, Lennon, Fox, Thompson, et al., Kalamazoo, Mich., Arthur Vogel, Quarles & Brady, Milwaukee, Wis., William H. Harbeck, Jeffrey K. Spoerk, Kalamazoo, Mich., Paul F. Ware, Jr., Jeffrey Bates, Barbara Gruenthal, Goodwin, Proctor & Hoar, Boston, Mass.,

This case is now before the Court on third-party defendant E.I. DuPont de Nemours and Company's September 7, 1989 Motion to Dismiss. Also before me is a Motion to Dismiss filed on September 21, 1989 by third-party defendant Northwest Coating Corporation. In the principal action, the State of Michigan sued Arco Industries Corporation ("Arco") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* The principal action—a multi-party CERCLA case—was settled by a consent decree on October 11, 1989. The essence of the State's claim was that Arco had damaged the Schoolcraft, Michigan aquifer by contaminating the groundwater downgradient of its facility in that area with volatile organic compounds ("VOCs").

Arco seeks to hold a dozen or so third-party defendants liable for contribution and indemnity. Three of those third-party defendants, E.I. DuPont De Nemours and Company ("Du Pont"), Northwest Coatings

Corporation ("Northwest"), and General Latex and Chemical Corporation ("General Latex") were suppliers to Arco. The other third-party defendants are persons that owned land near the site of the Arco facility, including the Village of Schoolcraft.

Third-party defendants Du Pont, Northwest, and General Latex supplied Arco with various neoprene compounds for use in its manufacture of rubbergoods and products. As part of its manufacturing process, Arco would leach the rubber products manufactured from the neoprene and dispose of the resulting wastewater, along with other waste streams, by discharging it to a lagoon behind its plant facility. The process of "leaching" involved immersion of the rubber products into water. The process removed salt and other waste-soluble materials. Thus some of the materials used in the manufacturing process—neoprene and neoprene latex (collectively "neoprene")—contained hazardous substances, including toluene, which were also leached out of the rubber products. These hazardous substances were discharged at the conclusion of the manufacturing process into Arco's seepage pond, and subsequently entered the aquifer. In its third-party complaint against DuPont, Arco claims that one of the contaminants identified in the State's complaint, toluene, was a by-product of the leaching process and seeks contribution and indemnity under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), as well as under common law theories of products liability and negligence.

In Arco's view, the suppliers of the neoprene, unlike Arco, each knew that the hazardous substances would leach out if Arco followed the treatment that each supplier recommended. Moreover, according to Arco, the hazardous substances were not, in any way, necessary to the proper functioning of the neoprene. In fact, Arco contends that hazardous substances could have been extracted prior to sale, without compromising the quality of the product.

## DISCUSSION

### Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Elliot Co., Inc. v. Caribbean Util. Co.*, 513 F.2d 1176 (6th Cir.1975). Technically, of course, the 12(b)(6) motion does not attack the merits of the case—it merely challenges the pleader's failure to state a claim properly. 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1364, at 340 (Supp.1987). In deciding a 12(b)(6) motion, the court must determine whether plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in the complaint at "face value" and construe them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983); *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1034–35 (6th Cir.1979); *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176 (6th Cir.1975).

The complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithan,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen,* 495 F.Supp. 822, 827 (E.D.Mich.1980). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermilion Foam Products Co. v. General Electric Co.,* 386 F.Supp. 255 (E.D.Mich. 1974). The court cannot dismiss plaintiff's complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### Supplier Liability under CERCLA

■ Under a 1986 amendment to CERCLA, "[a]ny person may seek contribution from any other person who is liable or potentially liable under [CERCLA]. 42

U.S.C. § 9613(f)(1).[1] This provision codifies the principle developed under federal common law that contribution should only be obtained from parties liable under the governing law. *Edward Hines Lumber Co. v. Vulcan Materials*, 685 F.Supp. 651, 654 (N.D.Ill.1988). *See also Colorado v. AS-ARCO, Inc.*, 608 F.Supp. 1484, 1492 (D.Colo.1985); *United States v. Ward*, 22 Env't.Rep. Cas. (BNA) 1235, 1238 (E.D.N.C.1984). I must therefore look to the Act to see if third party defendants here are responsible parties as defined in CERCLA and thus potentially liable for contribution.

Section 107 of CERCLA provides for liability against several types of responsible parties, including individual who arranged for disposal or treatment under § 107(a)(3), as follows:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances....

42 U.S.C. § 9607(a)(3).

Arco's third party complaint alleges that DuPont and NorthWest "each arranged for the disposal of ... hazardous substances within the meaning of Section 107(a) of CERCLA, 42 U.S.C. Section 9607." Complaint, at ¶ 10. Third party plaintiff argues to this Court that the provisions of § 107(a)(3) should be read broadly to include sellers of a hazardous substance where the hazardous substance is not a necessary component of a useful product. According to ARCO, the traditionally liberal approach to CERCLA liability should be followed here, triggering liability for those who sell products containing hazardous substances.

CERCLA does not define the term "arrange" in § 107(a)(3); however, both disposal and treatment are defined by the Act.

The term "disposal" and "treatment" are defined by reference to the Solid Waste Disposal Act, 42 U.S.C., § 9601(29). That is, CERCLA provides that "disposal" and "treatment" shall have the same meaning as those terms do in the Solid Waste Disposal Act. *See id.* Thus, "treatment" is defined as:

> [a]ny method, technique, or process, including neutralization, designed to change the physical, chemical or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. Such term includes any activity or processing designed to change the physical form or chemical composition of hazardous waste so as to render it nonhazardous.

42 U.S.C. § 6903(34).

The term "disposal" is defined as:

> [t]he discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground.

42 U.S.C. § 6903(3).

■ Courts interpreting § 107(a)(3) have consistently held that the mere sale of a product is not "arranging for disposal" within the meaning of the statute. *See,*

---

**1.** The applicable statutory provision provides that:

> (1) Contribution
> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this ection and the Federal Rules of Civil Procedure, and shall be governed by

Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.

42 U.S.C. Section 9613(f)(1).

e.g., *Prudential Insurance Co. v. United States Gypsum Co.*, 711 F.Supp. 1244 (D.C. N.J.1989); *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651 (N.D.Ill.), *aff'd* 861 F.2d 155 (7th Cir.1988); *Florida Power & Light Co. v. Allis–Chalmers Corp.*, 15 Chem. Waste Lit. Rep. 1209, 18 ELR 20998 (S.D.Fla.1988); *United States v. Westinghouse Electric Corp.*, 22 Env't. Rep. Cas. 1230 (S.D.Ind.1983). In *Prudential*, plaintiffs sought relief under CERCLA from defendants who had "manufactured, processed, marketed, distributed, supplied and/or sold" asbestos-containing products. The plaintiffs claimed that the conduct of the defendant suppliers constituted "disposal" of asbestos within the meaning of CERCLA. After reviewing relevant case law, the court stated:

> [A]s there was no affirmative act to get rid of the asbestos beyond the sale of it as part of a complete, useful product, for use in a building structure, the plaintiffs' allegations fail to reveal that there has been an arrangement for the disposal of hazardous materials....

*Id.*

The *Prudential* court looked at the plain meaning of "disposal," but stressed the language of the statute itself to reach its conclusion, writing "Looking at the term disposal in the context of the statute, ... it is clear that liability attaches to a party who has taken an affirmative act to dispose of a hazardous substance, that is, 'in some manner the defendant must have *dumped* his waste on the site at issue,' as opposed to convey a useful substance for a useful purpose." 711 F.Supp. at 1253 (quoting *Jersey City Redevelopment Authority v. PPG Industries*, 655 F.Supp. 1257, 1260 (D.N.J.1987), *aff'd*, 866 F.2d 1411 (3d Cir. 1988) (emphasis in original)). The court in *Prudential* summarized the case law on this issue, recognizing that the sale of a product is not a *per se* disposal arrangement resulting in liability under CERCLA. *Id.* The facts in *Prudential* suggested only that "there had been a conveyance of a useful, albeit dangerous product, to serve a particular, intended purpose." *Id.* at 1254. To conclude that such a transaction "constituted a CERCLA–type disposal" would strain the interpretation of the relevant terms, the court decided. In light of that decision, defendants' motion to dismiss for failure to state a claim was granted. *Id.*

In *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, the district court held against the owner of a wood treatment plant who brought an action against several of its suppliers to determine who should be responsible for the costs of removing contaminants from the owner's facility. The facts in *Hines* closely parallel the facts here. The defendant in *Hines* had supplied wood treatment chemicals as a primary product, and the plaintiff's disposal of runoff from the product caused the contamination at issue. The *Hines* court rejected the plaintiff's attempt to impose liability on the suppliers of the wood treatment chemicals, holding instead that "liability for environmental damage under § 9607(a)(3) attaches only to parties who transact in a hazardous substance *in order to dispose or treat the substance.*" *Id.* at 654 (emphasis added). In so holding the court stated:

> [T]he mere sale of ... [hazardous] substances for use in the wood treatment process does not constitute arranging for the disposal or treatment of a hazardous substance, even when process runoff containing the substances is placed at the same site. The defendants have presented evidence indicating that they sold the substances solely for use in wood treatment and not for the disposal of their own wastes or by-products. [Plaintiff] Hines has presented no evidence to the contrary. Defendants did not decide how the hazardous substance would be disposed of after its use in the wood treatment process. That they knew or may have known that Hines stored the process runoff in a holding pond at the Mena site does not create a material issue as to their liability. Based on these undisputed facts, neither [of the defendants] are responsible parties under § 9607(a)(3), and we grant their motions

for summary judgment as to such liability.

Citing a related case,[2] the district court in *Hines* set limits that are *relevant* to this case. It wrote:

> [L]iability for releases under § 9607(a)(3) is not endless; it ends with that party who both owned the hazardous waste and made the crucial decision how it would be disposed of or treated, and by whom.

*Hines,* 685 F.Supp. at 655 (quoting *United States v. A & F Materials,* 582 F.Supp. 842, 845 (S.D.Ill.1984)).

Other cases have so held, including the district court in *Florida Power & Light Co. v. Allis Chalmers Corp.,* 15 Chem. Waste Lit. Rep. 1209, 18 E.L.R. 20998 (S.D.Fla. 1988). In that case, the defendant manufacturers' motion for summary judgment was granted as to the plaintiffs' claim for contribution under CERCLA. Defendant manufactured electrical transformers which contained polychlorinated biphenyls, commonly known as PCBs. Florida Power & Light Company had purchased the transformers for use in its utility business. When the transformers neared the end of their useful life, Florida Power & Light contracted with another company for their sale as scrap. After salvaging what it could, the salvager, Pepper Steel & Alloys, Inc., disposed of the transformers at its disposal site. Under plaintiff Florida Power & Light's theory, the manufacturer of the transformers was liable for contribution under CERCLA for environmental damage resulting from the eventual disposal of PCBs. *Id.*

The *Florida Power & Light* court summarized the case law to hold that the sale of a useful product which contains a contaminant does not subject a seller to liability under CERCLA. *Id.* at 1560. According to that court:

> Liability under CERCLA is narrowly construed [here]; only the party who owns the *hazardous waste product* (as opposed to the useful product containing it) can be liable, and then only if that party is the one that decided how and by whom it would be treated and disposed. As noted in [the case of] *Conservation Chemical,* CERCLA imposes strict liability on that party.

*Id.*

Also, in *United States v. Westinghouse Electric Corp.,* the government sued Westinghouse under CERCLA for sending PCB contaminated waste to a landfill in Indiana. 22 Env't. Rep. Cas. 1230 (S.D.Ill.1983). Westinghouse then brought a third party complaint against Monsanto which had originally supplied the PCBs to Westinghouse for use as a dielectric fluid in electrical equipment manufactured by Westinghouse. The court in that case dismissed the CERCLA claims against Monsanto, holding that it is not alleged that Monsanto disposed of any hazardous waste and did not contract for removal or disposal of such waste. According to the *Westinghouse* court, Monsanto is thus not liable under the third party complaint to Westinghouse. *Id.* at 1233.[3]

■ Third party plaintiff in the matter before me argues that the statutory language of CERCLA and federal common law confirms liability for third party defen-

---

**2.** In *United States v. A & F Materials Co., Inc.,* 582 F.Supp. 842 (S.D.Ill.1984), the court found McDonnell Douglas Corporation, who sold a caustic solution to another defendant, to be a responsible party under CERCLA because the motivation for the sale was the disposal of the solution. That the purchaser of the solution used the solution in its own commercial process did not relieve McDonnell Douglas of CERCLA liability. The court stated that the crucial inquiry for establishing liability under § 9607(a)(3) is determining "who decided" the location and method of disposal or treatment of the hazardous substance. *Id.*

**3.** Interestingly, the court in this case reviewed the objectives of the federal acts, including CERCLA, finding that the goal to be advanced—regulation of the treatment, storage, transportant, and disposal of hazardous wastes—is inconsistent with holding Monsanto liable for a one-time "control" of the manufactured product containing the hazardous substance. The court reasoned that Westinghouse's *own* liability stemmed not from "its control of the manufactured product of Monsanto," but instead from its disposal or dumping of waste products hazardous to the environment. 22 Env't. Rep. Cas. at 1233.

dants in this case who have sold a useful product with a hazardous substance not necessary to the functioning of the product, and thus of no use to the purchaser. ARCO further argues that the cases on this issue, including the ones this Court has just discussed, stand only for the proposition that a seller could be held liable for arranging the disposal of a hazardous waste product in the limited circumstances where the product could be shown *not to function at all* absent the hazardous substance. The policy behind such a rule, according to ARCO, is that useful products would undoubtedly be kept out of the market entirely if liability were imposed under these circumstances. In contrast, ARCO points to how the product sold to it by third party defendants could have been manufactured and sold without the neoprene, a hazardous waste with no vital purpose.

I believe that ARCO makes a clever distinction here, one that leads me to anticipate the possible positive results which would spring from such a rule. I cannot, however, substitute my own policy preferences for those quite evidently held by Congress when it enacted § 107(a)(3). Neither can I blind myself to the straightforward law set forth in the recent judicial opinions interpreting this section on this very issue. There is simply no language supporting ARCO's reading in these cases, in fact, if anything, the cases are careful to limit broad readings of the language "or otherwise arranged for" the disposal of hazardous substances. 42 U.S.C. § 9607(a)(3). *See, e.g., Prudential Insurance Co. v. United States Gypsum Co.,* 711 F.Supp. 1244 (D.C.N.J.1989); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651 (N.D.Ill., *aff'd* 861 F.2d 155 (7th Cir.1988); *Florida Power & Light Co. v. Allis–Chalmers Corp.,* 15 Chem. Waste Lit. Rep. 1209, 18 ELR 20998 (S.D.Fla.1988); *United States v. Westinghouse Electric Corp.,* 22 Env't. Rep. Cas. 1230 (S.D.Ind.1983).

Further, I choose not to rely on the few cases third party plaintiff cites directly. In one of these cases, *United States v. Aceto Agricultural Chemicals Corp.,* 872 F.2d 1373, 1381 (8th Cir.1989), the court in dicta

recognized as correct cases holding that the sale of a useful product incorporated into a product and then disposed of is not "arranging for a disposal." The court then went on to find this line of reasoning inapplicable to the case before it where the parties manufacturing and providing the substances retained ownership—there was no transfer of ownership of the hazardous substances. Instead, the owner of the contaminated site, a pesticide forumator, performed a process on products owned by defendants—who were manufacturer/providers—to mix and formulate the pesticide substances, eventually sending them back to the manufacturer or the manufacturer's customers. I find the *Aceto Agricultural Chemicals* case, as did the Eighth Circuit, inapplicable to a case similar to the one before me. *See id.*

Two other cases on which third party plaintiff ARCO relies are distinguishable. In *New York v. General Electric Co.,* the allegation that defendant sold used transformer oil—in order to dispose of it—was sufficient to state a claim of CERCLA liability. 592 F.Supp. 291 (N.D.N.Y.1984). To interpret § 107(a)(3), the court in *General Electric* focused on the defendant's argument that the sale of a hazardous substance to dispose of that substance was distinguishable from the actual disposal of the substance. The court rejected the distinction, finding that CERCLA liability attaches to the party who makes the decision to dispose of the substance. *Id.* I must agree with the court in *Edward Hines* when it concluded that the *General Electric* case "in no way stated or implied that liability attaches to all transactions in a hazardous substance." 685 F.Supp. at 655.

The court in *Edward Hines* also found unpersuasive the argument that the case *United States v. Conservation Chemical,* 619 F.Supp. 162 (W.D.Mo.1985) should be read to support a markedly broad reading of § 107(a)(3). The *Conservation Chemical* case, "at most", wrote the court in *Edward Hines,* "stands for the proposition that summary judgment for a defendant on CERCLA liability is inappropriate when there is some evidence that the motivation

behind a transaction was to dispose of a waste or by-product." 685 F.Supp. at 656.[4]

Given all the foregoing, I conclude that the motions to dismiss which are before me should be granted. The law is straight forward; CERCLA liability is not available under the circumstances in this case. I will enter an appropriate order.

---

4. In *United States v. Conservation Chemical,* the court denied certain defendants' motions for summary judgment by finding that CERCLA liability attaches to the sale of fly ash for use in a waste disposal and treatment process. According to *Edward Hines,* the reasoning in *Con-servation Chemical* seems at times "contra-dictory." *Id.* Indeed, the court in *Conservation Chemical* rejected defendants' argument that the court should undertake a "legal analysis which requires examination of the primary nature of the transaction from the defendant's viewpoint to determine whether the defendant was acting with the intent to dispose." Yet the court in its conclusion stated that where there was evidence that defendants owned the hazardous sub-stances and made the decision how it would be disposed of summary judgment should *not* be granted in defendants' favor. 619 F.Supp. at 241. The *Edward Hines* court summed up by writing:

To the extent that *Conservation Chemical* goes further and would attach liability to any transaction in a hazardous substance, regard-less of the motivation behind the transaction, we respectfully disagree with the decision. 685 F.Supp. at 656.