848 F.Supp. 1352 (1994)
UNITED STATES of America, Plaintiff,
v.
CELLO-FOIL PRODUCTS, INC., et al., Defendants.
Frank J. KELLEY, Attorney General of the State of Michigan, and the State of Michigan, Plaintiffs,
v.
CELLO-FOIL PRODUCTS, INC., et al., Defendants.
Nos. 1:92-CV-713, 4:92-CV-139.
United States District Court, W.D. Michigan, S.D.
March 17, 1994.
*1353 W. Francesca Ferguson, Asst. U.S. Atty., Michael H. Dettmer, U.S. Atty., Grand Rapids, MI, Thomas A. Mariani, Jr., Leslie E. Lehnert, U.S. Dept. of Justice Environmental Enforcement Section, John Z. Lee, U.S. Dept. of Justice Environment & Natural Resources Div., Environmental Defense Section, Vicki A. O'Meara, U.S. Dept. of Justice Environment & Natural Resources Div., Washington, DC, Daniel R. Dertke, U.S. Dept. of Justice Environmental & Natural Resources Div., Environmental Defense Section, Washington, DC, Roger Grimes, Asst. Regional Atty., U.S. E.P.A., Chicago, IL, for U.S.
John R. LaParl, Jr., Smith, LaParl & Mequio, Portage, MI, for Cello-Foil Products, Inc., defendant.
Larry C. Willey, Grand Rapids, MI, Thomas W. Daggett, Wildman, Harrold, Allen & Dixon, Chicago, IL, Kristen E.D. Rickman, Larry Willey Law Office, Grand Rapids, MI, for Clark Equipment Co.
Larry C. Willey, Grand Rapids, MI, Timothy A. Vanderver, Jr., Suzanne R. Schaeffer, John Charles Martin, Patton, Boggs & Blow, Washington, DC, Kristen E.D. Rickman, Larry Willey Law Office, Grand Rapids, MI, for General Foods Corp.
Larry C. Willey, Kristen E.D. Rickman, Larry Willey Law Office, Grand Rapids, MI, Timothy C. Russell, Stuart E. Hunt, Sonnenschein, Nath & Rosenthal, Washington, DC, for Hoover Universal Inc.
James M. Sullivan, Sullivan, Hamilton, Schulz, Allen & Letzring, Battle Creek, MI, for Sullivan, Hamilton, Schulz, Allen & Letzring.
Michael F. Kelly, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Aero-Motive Co. Controlled Rubber Products and A.O. Smith Inland Corp.
William J. Heaphy, Vandeveer, Garzia, P.C., Holland, MI, Stephen D. Williger, Benesch, Friedlander, Coplan & Aronoff, Cleveland, OH, for Allen Elec. & Equipment Co.
Charles P. Graupner, Michael, Best & Friedrich, Milwaukee, WI, Charles V. Sweeney, Michael, Best & Friedrich, Madison, WI, for Anderson Development Co.
Jon R. Muth, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for Arco Industries Corp. and Upjohn Co.
Patrick Hanes, Howard & Howard, Lansing, MI, for Barney's Glass Service, Inc.
Clyde J. Robinson, City of Battle Creek Deputy City Atty., Paul R. Levy, City Atty., Battle Creek, Battle Creek, MI, for Battle Creek, City.
Millard N. Mayhall, Schroeder, DeGraw, Kendall & Mayhall, Marshall, MI, for Battle Creek Equipment Co. and Marshall Brass Co.
Jeffrey L. Green, Loomis, Ewert, Ederer, Parsley, Davis & Gotting, et al., Lansing, MI, for Battle Creek Gas Co.
Nelson T. Karre, Vandervoort, Cooke, McFee, Christ, Carpenter & Fisher, Battle Creek, MI, for Battle Creek Tile & Mosaic Co., Commercial Elec. Co., Dare Products, Inc., Embossing Printers, Inc., McCarthy & Fleece Chemical Co., Springfield Foundation Co., Parson's Inc., Reichert Steel Const. Co., Inc.
John A. Ferroli, Dykema, Gossett, Grand Rapids, MI, for Allied Signal, Dana Corp., Eaton Corp., General Motors Corp., James River Corp., Inc., Stauffer Chemical Corp. and Flint Inc. Corp.
Steven C. Kohl, Howard & Howard, PC, Bloomfield Hills, MI, for Bennett Mfg. Co.
*1354 Stephen P. Vella, Harvey, Kruse, Westen & Milan, PC, Troy, MI, for Marley Co., and Snowcroft Co.
H.G. Sparrow, III, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Bronson Specialties Inc., and Quality Springs Products, Inc.
Todd R. Dickinson, Tolley, Verwys, Vandenbosch & Walton, PC, Grand Rapids, MI, for Brunswick Corp.
Ronald A. Lebeuf, Battle Creek, MI, for Calhoun Mfg. Co.
Charles R. Toy, Farhat, Story & Kraus, PC, East Lansing, MI, for Paul H. Callender Co., Inc.
Richard A. Pattison, Richard A. Pattison Law Offices, Battle Creek, MI, for Central Michigan Press, Inc.
James L. Juhnke, Battle Creek, MI, for Christman & Associates.
Cortney E. Kelly, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, Steven C. Kohl, Howard & Howard, P.C., Bloomfield Hills, MI, for Crotty Corp.
Dustin P. Ordway, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Federated Publication, Inc., Goodyear Tire and Rubber Co., and MI Carton Co.
Daryl J. Mumford, Holmes, Mumford, Schubel, Norlander & MacFarlane, Battle Creek, MI, for F & A Fabricating Co., Inc.
Michael H. Perry, Fraser, Trebilcock, Davis & Foster, PC, Lansing, MI, for FMC Corp.
Thomas C. Simpson, May, Simpson & Strote, Bloomfield Hills, MI, for Findley Adhesives, Inc.
Margaret A. Coughlin, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Robert E. Costello, Ford Motor Company, Dearborn, MI, Dustin P. Ordway, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Ford Motor Co.
John R. Dresser, Dresser Law Office, P.C., Sturgis, MI, for Gravi-I-Flo Corp., McGraw Edison Co., Champion Intern. Corp., and L.T.I. Printing Inc.
Mark E. Brouwer, Warner, Norcross & Judd, Grand Rapids, MI, for Georgia-Pacific Corp., Sun Chemical Corp. and Union Pump Co.
Jon R. Muth, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for Hayes Mach. Co.
Robert M. Olian, Katherine Anne Moertl, Sidley & Austin, Chicago, IL, for Household Intern.
Daniel P. Malone, Butzel Long, Detroit, MI, for Intern. Paper Co.
Michael B. Ortega, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for Interkal, Inc.
Bruce W. Martin, Deming, Hughey, Lewis, Allen & Chapman, PC, Kalamazoo, MI, for Terminix Intern.
John M. Sims, Robison & Sims, PC, Albion, MI, for Michner Plating Co.
James D. Norlander, Holmes, Mumford, Schubel, Norlander & MacFarlane, Battle Creek, MI, for Modern Transit Mix, Inc.
Joseph E. Day, Hines Pence Day & Powers, Cedar Rapids, IA, for Great Plaines Gas Co.
Douglas Sheppard Arnold, J. Vance Hughes, Kilpatrick & Cody, Washington, DC, for Abex-Nwl Aerospace.
Thomas F. Karaba, Crowley Barrett & Karaba, Ltd., Chicago, IL, for O'Brien Corp.
Jeffrey Damen Swenarton, Kreis, Enderle, Callander & Hudgins, PC, Kalamazoo, MI, for Parker Hannifin Corp.
Thomas M. Fallucca, Ufer, Spaniola, Fallucca & Cheli, Bloomfield Hills, MI, for Production Rubber Products Co., Inc.
Alan H. Silverman, Silverman, Rodbard & Smith, PC, Kalamazoo, MI, for Superior Colour Graphics and Unifab Corp.
Jeffrey M. Karp, Swidler & Berlin, Washington, DC, for Emhart Industries.
Vincents Printing Service, pro se.
Randall S. Schau, Gemrich, Moser, Bowser, Fette & Lohrmann, Michael B. Ortega, Miller Canfield, Paddock & Stone, Kalamazoo, MI, for W-L Molding Co.
*1355 Timothy J. Lozen, Freeman McKenzie, PC, Mt. Clemens, MI, for Weyerhaeuser Co.
Thomas E. Harmon, Branch County Friend of Ct., Coldwater, MI, for Woodcrafters.
Alvin D. Treado, Culver, Lague & McNally, Muskegon, MI, for Yard-Man, Inc.
Robert P. Reichel, Asst. Atty. Gen., Frank J. Kelley, Atty., Environmental Protection Div., Lansing, MI, for Frank J. Kelley, Atty. Gen., and State of Michigan.

OPINION
ROBERT HOLMES BELL, District Judge.
These consolidated cases are before the Court at this time for the Court to decide questions of law raised in Defendants'[1] motion for summary judgment and the supplemental motion for summary judgment made by two of the defendants, Cello-Foil Products, Inc. and Hoover Universal, Inc. (the "supplemental motion"). On January 24, 1994, Magistrate Judge Joseph G. Scoville ordered a stay of the proceedings in these cases for sixty days pending resolution of the issues raised in these motions. The Government[2] and Defendants argued these matters before the Court on March 3, 1994.
The gravamen of the Government's claim against Defendants is that Defendants arranged for the disposal of hazardous substances at the Thomas Solvent Raymond Road site within the meaning of section 107(a)(3) of the Comprehensive Environmental Response Compensation and Liability Act (CERCLA)[3] at which site substances of the same or similar types were released into the environment triggering the incurrence of response costs by the Government.

FACTS
During 1981, it was determined that the water source for the City of Battle Creek, Michigan, the Verona Well Field, was contaminated with a number of hazardous substances. The Michigan Department of Natural Resources identified the Thomas Solvent Raymond Road site as one of the potential sources of this contamination. See generally Kelley v. Thomas Solvent Co., 727 F.Supp. 1532 (W.D.Mich.1989).
Thomas Solvent Co. was a producer of solvents which operated in Battle Creek from the time of its incorporation in 1963 until 1984, the year it filed for voluntary bankruptcy. During these years, Thomas Solvent sold virgin solvents to numerous customers including Defendants. These solvents were generally delivered in fifty-five-gallon drums. Generally, Thomas Solvent used its own drums and charged its customers, including Defendants, a deposit thereon which Thomas Solvent returned when the customer returned the drum. Most often, the Thomas Solvent delivery-person picked up the drums to be returned when dropping off drums full of solvents.
The returned drums were apparently most often taken to Thomas Solvent's Raymond Road facility. Once there, Thomas Solvent employees would inspect the drums. Those drums in need of reconditioning would often immediately be sent to a reconditioner without being rinsed or otherwise cleaned. Drums not in need of reconditioning would sometimes be refilled without the drums first being rinsed.[4] However, it appears from the *1356 deposition testimony of several witnesses that most often the drums were rinsed with a rinseate before being refilled.
Especially prior to 1978, when the Thomas Solvent employees rinsed the drums, the used rinseate was usually dumped onto the ground. Particularly in its later years, it appears that Thomas Solvent became more careful with the used rinseate and began to recycle it at off-site locations.

SUMMARY JUDGMENT
Defendants' motion, as well as the supplemental motion, is one seeking summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Defendants' motion asks the Court to evaluate the factual support for the Government's assertion that Defendants' return of the drums was tantamount to an arrangement for disposal. The Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53, 106 S.Ct. at 2512 (1986). If Defendants carry their burden of showing that there is an absence of evidence to support a claim, then the Government must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). Thus, the Government must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." See Liberty Lobby, 477 U.S. at 257, 106 S.Ct. at 2514. If, after a sufficient time for discovery, the Government is unable to demonstrate that they can produce sufficient evidence at trial to withstand a directed verdict motion, summary judgment is appropriate. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

"ARRANGER" LIABILITY
In the instant cases, the Government seeks to impose liability upon Defendants pursuant to section 107(a)(3) of CERCLA. The issue raised by Defendants' motion for summary judgment, as framed by Magistrate Judge Scoville, is whether Defendants arranged for the disposal of a hazardous substance within the meaning of section 107(a)(3). That section provides:
Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section 
* * * * * *
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, ... shall be liable....
42 U.S.C. § 9607(a). Liability incurred under this provision is known as generator, or arranger, liability.
In cases where a party has arranged for the disposal of a hazardous substance by means of a contract or agreement with another to dispose of the substance, the liability of that party is clear under this section. However, a great deal of CERCLA litigation has involved the amorphous phrase "or otherwise arranged for disposal." Congress apparently intended arranger liability to extend beyond those cases where there was a formal contract or agreement to arrange for disposal. However, such liability is not all-encompassing; it is clear from CERCLA case law that not all transactions which involve hazardous substances are arrangements for disposal.

The Government's Claim
The instant case tests the periphery of the meaning of "otherwise arranged for disposal." The Government does not contend that Defendants arranged for the disposal of a hazardous substance by means of a contract or agreement. Rather, the Government *1357 contends that Defendants "arranged for disposal" by having Thomas Solvent take and dispose of the residual amounts of hazardous substances that remained in the drums which Defendants returned to Thomas Solvent as an incident to the drum return. The Government will succeed only if the drum-return-for-deposit arrangement between Defendants and Thomas Solvent was some other kind of an arrangement for disposal.
It is clear that Defendants had an agreement with Thomas Solvent with regard to the drum deposit. Defendants paid deposits for the drums and Thomas Solvent refunded the deposits as Defendants returned the drums. The narrower issue in the instant case, therefore, is whether the drum-deposit agreement impliedly suggests an arrangement for the disposal of any residual amounts which remained in the drums. This narrower legal question appears to be an issue of first impression.

Intent
Defendants' brief in support of their motion for summary judgment advances several arguments as to why their relationship with Thomas Solvent did not involve an arrangement for disposal of hazardous substances. The Court finds compelling Defendants' argument that, because they lacked intent to dispose of hazardous substances, they may not be held liable as arrangers.
In response, the Government argues that, since the meaning of the term "disposal" includes a spilling of a hazardous substance, see 42 U.S.C. § 9601(29); 42 U.S.C. § 6903(3), "arranged for" must be a term of strict liability wherein subjective intent to dispose is irrelevant. However, words, including those employed by Congress in a statute, vary in meaning depending upon the context in which the word is used. See Amcast Indus. Corp. v. Detrex Corp., 2 F.3d 746, 751 (7th Cir.1993) (Posner, J.), cert. denied, ___ U.S. ___, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994). The court in Amcast wrote:
In the context of the operator of a hazardous-waste dump, "disposal" includes accidental spillage; in the context of the shipper who is arranging for the transportation of a product, "disposal" excludes accidental spillage because you do not arrange for an accident except in the Aesopian sense illustrated by the staged accident.
The words "arranged with a transporter for transport or treatment" appear to contemplate a case in which a person or institution that wants to get rid of its hazardous wastes hires a transportation company to carry them to a disposal site. If the wastes spill en route, then since spillage is disposal and the shipper had arranged for disposal  though not in that form  the shipper is a responsible person and is therefore liable for clean-up costs. But when the shipper is not trying to arrange for the disposal of hazardous wastes, but is arranging for the delivery of a useful product, he is not a responsible person within the meaning of the statute and if a mishap occurs en route his liability is governed by other legal doctrines.
Id. That court determined that "[a]lthough the statute defines disposal to include spilling, the critical words for present purposes are `arranged for.' The words imply intentional action." Id. (emphasis added).
This Court finds the Seventh Circuit's analysis compelling. Further, since Congress left "arranged" undefined in this statute, the Court also considers the common meaning of the word "arrange." When used as an intransitive verb, as it is in section 107(a)(3), the word "arrange" means "to make preparations: PLAN." Webster's Third New International Dictionary 120 (1986). Whatever else "otherwise arranged for disposal" means, this Court concludes that it does not apply to situations where there was no intent to dispose of a hazardous substance.
That arranger liability is dependent upon intentional conduct is a principle recognized within this circuit and district as well. The Sixth Circuit has held that "[l]iability only attaches to parties that have `taken an affirmative act to dispose of a hazardous substance....'" AM Int'l, Inc. v. International Forging Equip. Corp., 982 F.2d 989, 999 (6th Cir.1993) (emphasis added) (quoting Prudential Ins. Co. v. United States Gypsum, 711 *1358 F.Supp. 1244, 1253 (D.N.J.1989)). The Prudential case was also relied upon by another court within this district. In Kelley v. Arco Indus. Corp., the court cited Prudential with approval for the proposition that "`as there was no affirmative act to get rid of the asbestos beyond the sale of it as part of a complete, useful product, for use in a building structure, the plaintiffs' allegations fail to reveal that there has been an arrangement for the disposal of hazardous materials....'" Kelley v. Arco Indus. Corp., 739 F.Supp. 354, 358 (W.D.Mich.1990) (emphasis added) (quoting Prudential Ins. Co. v. United States Gypsum, 711 F.Supp. 1244, 1253 (D.N.J. 1989)). Arco also cited with approval an Illinois case which held that "`liability for environmental damage under § 9607(a)(3) attaches only to parties who transact in a hazardous substance in order to dispose or treat the substance.'" Id. (emphasis added in Arco) (quoting Edward Hines Lumber Co. v. Vulcan Materials Co., 685 F.Supp. 651, 654 (N.D.Ill.), aff'd, 861 F.2d 155 (7th Cir. 1988)).
Applying these rules to the facts of the instant case, the Court concludes, therefore, that Defendants are not liable under section 107(a)(3) absent a showing that they intended to dispose of the residual amounts of the hazardous substances remaining in their returned drums. It is immediately clear that the Government's claim against Defendants fails to establish liability. The purpose of Defendants' returning of the drums was to recover the deposits that Defendants had paid; the Government has absolutely no proof that Defendants' purpose was to dispose of residual amounts of hazardous substances remaining in those drums. That Defendants incidentally got rid of these residues does not mean that it was Defendants' purposeful intent to dispose of the residues; rather, this was merely incidental to the drum return.
This conclusion is fully consistent with the line of cases which support the rule that the sale of a product or building is not a per se disposal of a hazardous substance even though the hazardous substance is gotten rid of as an incident to the sale. See, e.g., AM Int'l, 982 F.2d at 998-99. While the instant case is unique in that it involved a drum deposit rather than a sale, the same principle applies equally well. The common element between the two is the fact that the underlying transaction is the intended purpose of the party rather than the incidental "disposal" of a hazardous substance. Just as a sales transaction does not establish a per se disposal of a hazardous substance incidentally "disposed" of, neither does a deposit transaction. See Arco, 739 F.Supp. at 356 (holding that no liability attaches even though, assuming for Rule 12(b)(6) purposes, the "hazardous substances were not, in any way, necessary to the proper functioning of the neoprene" and "could have been extracted prior to sale, without compromising the quality of the product.").

CONCLUSION
Since the Government has failed to show any evidence demonstrating that Defendants intended to dispose of residual amounts of a hazardous substance, the Court will grant Defendants' motion for summary judgment. As the Government's complaint sought to impose liability against Defendants solely pursuant to section 107(a)(3), the Court will enter judgment in favor of Defendants.
In the instant case, defendants Cello-Foil Products, Inc. and Clark Equipment Co. also brought a third-party action against numerous parties who allegedly had also been drum-deposit customers of Thomas Solvent. The third-party complaint seeks contribution pursuant to 42 U.S.C. § 9613(f) and MICH. COMP.LAWS § 600.2925a(1) for "any amounts that Third-Party Plaintiffs may be required to pay by virtue of any judgment that may be entered in this consolidated action." See 3d-Party Pls.' Compl. ¶¶ 24, 26. Since the Court has determined that the Government has failed in its claim against Defendants, the third-party action of defendants Cello-Foil Products, Inc. and Clark Equipment Co. for contribution is rendered moot and will be dismissed as that action no longer presents a justiciable case or controversy.
Since the Court will grant Defendants' motion for summary judgment, the supplemental motion of defendants Cello-Foil Products, *1359 Inc. and Hoover Universal, Inc. is rendered moot and will be denied as such.
An order consistent with this opinion will be entered.

FINAL JUDGMENT
This action came on for decision by the Court, Honorable Robert Holmes Bell, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered as set forth in the opinion entered this date,
IT IS ORDERED AND ADJUDGED that the motion for summary judgment of defendants Cello-Foil Products, Inc., Clark Equipment Co., Hoover Universal, Inc., and General Foods Corp. (docket # 289 in Case No. 1:92-CV-713; docket # 233 in Case No. 4:92-CV-139) be GRANTED.
IT IS FURTHER ORDERED that JUDGMENT be entered for defendants Cello-Foil Products, Inc., Clark Equipment Co., Hoover Universal, Inc., and General Foods Corp.
IT IS FURTHER ORDERED AND ADJUDGED that the supplemental motion for summary judgment of defendants Cello-Foil Products, Inc. and Hoover Universal, Inc. (docket # 311 in Case No. 1:92-CV-713 and docket # 252 in Case No. 4:92-CV-139) be DENIED as moot.
IT IS FURTHER ORDERED that the third-party action of defendants Cello-Foil Products, Inc. and Clark Equipment Co. be DISMISSED as moot.
IT IS FURTHER ORDERED that any and all pending Motions and Applications be and they are hereby DENIED as moot.
NOTES
[1] The term "Defendants" as used herein refers collectively to the four defendants in these cases: Cello-Foil Products, Inc.; General Food Corp.; Clark Equipment Co.; and Hoover Universal, Inc.
[2] The term "Government" as used herein refers collectively to the plaintiffs of these cases, the United States of America and the State of Michigan.
[3] The State of Michigan complaint states two counts: The first is brought pursuant to § 107(a)(3) of CERCLA, and the second pursuant to Michigan Environmental Response Act, 1982 Mich.Pub.Acts 307, as amended, MICH.COMP. LAWS § 299.612(1)(d) which is, in all respects relevant to these motions, identical to § 107(a)(3) of CERCLA. Accordingly, for the purposes of this opinion, the Court's discussion concerning 42 U.S.C. § 9607(a)(3) should be treated as applicable to MICH.COMP.LAWS § 299.612(1)(d).
[4] It was the official policy of Thomas Solvent to clean all drums which were returned to it; however, in practice this policy was not always followed.