**EDWARD HINES LUMBER COMPANY, Plaintiff,**

v.

**VULCAN MATERIALS COMPANY, Defendant and Third–Party Plaintiff,**

v.

**REILLY TAR & CHEMICAL CORP.; Bernuth Lembcke; Allied Corporation; USX Corporation (formerly known as United States Steel Corporations); Koppers Company, Inc.; Crown Zellerbach Corporation; Joc Oil Exploration Co., Inc.; Monsanto Company; and Osmose Wood Preserving Co. of America, Inc., Third–Party Defendants.**

No. 85 C 1142.

United States District Court,
N.D. Illinois, E.D.

Feb. 2, 1988.

Robin R. Lunn, Robert K. Neiman, Maureen Martin, Keck Mahin & Cate, Chicago, Ill., for plaintiff.

Algimantas Kezelis, James M. Hofert, French, Rogers, Kezelis & Kominiarek, Chicago, Ill., for Vulcan Materials Co.

Robert L. Shuftan, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Koppers Co., Inc.

James H. Schink, John W. Roberts, Kirkland & Ellis, Chicago, Ill., for Monsanto Co.

Robert M. Burke, Steven M. Mahoney, Heineke, Burke & Healy, Chicago, Ill., for Osmose Wood Preserving.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Edward Hines Lumber Company ("Hines") brought this action to determine who should be held responsible for the costs of removing contaminants from a wood treatment facility in Mena, Arkansas. In this decision, we address defendants Reilly Tar & Chemical Corp., Bernuth Lembcke Co., Inc., Allied Corp. and Koppers Company, Inc. (collectively "Creosote Defendants") and Osmose Wood Preserving Co. of America, Inc.'s ("Osmose") motions to dismiss or, alternatively, for summary judgment. For the following reasons, we grant the motions for summary judgment.

### I

### Material Undisputed Facts

From 1967 to 1978, Hines owned and operated a wood treatment facility in Mena,

Arkansas ("Mena site") at which Hines treated wood with various chemicals including pentachlorophenol ("PCP") supplied by the Vulcan Materials Company and the Monsanto Company, creosote supplied by the Creosote Defendants and chromated copper arsenate ("CCA") supplied by Osmose. The Creosote Defendants' relationship with Hines at the Mena site went no further than manufacturing and selling to Hines the creosote for wood treatment.

Osmose's relationship with Hines was more extensive. Pursuant to an agreement ("Hines–Osmose Agreement"), Osmose advised and consulted with Hines on the selection of the appropriate location for the CCA treatment system, designed, constructed and installed the system at the Mena site, trained personnel to run the system and supplied the CCA for the system. Osmose provided technical information and marketing assistance to Hines and authorized Hines to use the Osmose trademark. Hines exercised sole responsibility for the "operation, maintenance, upkeep and control of its plant or any part of its products with local, State and Federal regulations or requirements or OSMOSE standards." Hines–Osmose Agreement, ¶ III(g). Osmose retained the right to "full and immediate access to the plant and to all chemical processes and products located thereon or produced thereby for the purposes of insuring quality control according to OSMOSE standards...." *Id.*, ¶ III(i). No Osmose employees attended to the Mena site on a regular basis.

Hines stored run-off from the wood treatment process in a holding pond at the site. In March of 1982, the United States Environmental Protection Agency ("EPA") notified Hines that the chemicals in the holding pond created a potential environmental risk and identified PCP, creosote and CCA as the offending substances. Hines was later named as a defendant in litigation alleging personal injury and property damage resulting from the Mena site contamination.

II

Case History

Hines brought this action to establish liability for past and future damages caused by the contaminants in the Mena site holding pond. Hines initially filed this action against Vulcan Materials Company. Other defendants were named as third-party defendants and later as direct defendants. Several were voluntarily dismissed from this action. In a previous decision, we dismissed the state law damages counts against all defendants, expressly reserving judgment on the remaining counts. *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 669 F.Supp. 854 (N.D.Ill.1987). In another decision, we entered the Agreed Orders that dismissed with prejudice Vulcan and Monsanto Company. *Hines v. Vulcan*, No. 85 C 1142, slip op. (N.D.Ill. Dec. 2, 1987) [available on WESTLAW, 1987 WL 27368].

We now address Osmose's and the Creosote Defendants' motions for summary judgment[1] on the remaining counts, Counts VI and IX. In these counts, Hines seeks a declaratory judgment that the Creosote Defendants and Osmose are liable for those portions of any future liability that Hines may incur "as a result of allegations of environmental harm at the Mena site" that are attributable to the creosote and CCA. Hines states in its responsive pleadings that the future liability to which it refers are response costs (the costs of removing the contaminants from the Mena site) incurred under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S. C. § 9601 *et seq.* Hines further states that these counts arise under CERCLA or, alternatively, state law. In their motions, defendants contend that the declaratory judgment counts for response costs can be brought only under CERCLA, not state law, and that defendants' involvement at the Mena site was insufficient to warrant CERCLA liability.

---

1. Since our decision considers evidence presented outside of the pleadings, we treat defendants' motions as motions for summary judgment.

*Roman v. United States Postal Service,* 821 F.2d 382 (7th Cir.1987).

## III

### Liability Under CERCLA

Under a 1986 amendment to CERCLA, "[a]ny person may seek contribution from any other person who is liable or potentially liable" under CERCLA. 42 U.S.C. § 9613(f)(1). This provision codifies the federal common law principle, recognized by the courts in the context of CERCLA, that contribution can be obtained only from parties liable under the governing law. *Colorado v. ASARCO, Inc.,* 608 F.Supp. 1484, 1492 (D.Colo.1985); *U.S. v. Ward,* 22 Env't Rep.Cas. (BNA) 1235, 1238 (E.D.N.C. 1984). Hines can succeed in its quest for declaratory relief only if it can establish that Osmose and the Creosote Defendants are independently liable under CERCLA for the Mena site contamination attributable to the CCA and creosote. We conclude that the undisputed facts demonstrate that the defendants are not responsible parties as defined in CERCLA and therefore cannot be liable for contribution under that statute.

### A. Liability of Osmose and the Creosote Defendants Under Section 9607(a)(3)

In responding to defendants' motions, Hines contends that defendants are responsible parties since they are

> person[s] who by contract, agreement, or otherwise arranged for disposal or treatment, of hazardous substances owned or possessed by such person[s], by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances....

42 U.S.C. § 9607(a)(3). Hines argues that this provision reaches all chemical manufacturers, such as the defendants, who sell a hazardous substance to a party who uses the substance in its manufacturing or commercial process and then disposes of process run-off containing the substance in a holding pond at the same site. For Hines, the key phrase is "hazardous substance." Because primary products as well as waste products sold to manufacturers can be hazardous substances as defined by CERCLA, Hines argues, CERCLA liability attaches to any transaction in a hazardous substance that later contaminates a facility.

We do not share Hines' expansive interpretation of § 9607(a)(3). While Hines is correct that hazardous substances encompass more than "wastes" and may include "primary products," 42 U.S.C. § 9601(14), *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 239 (W.D. Mo.1985) (*"Conservation Chemical "*), Hines' interpretation avoids the phrase "arranged for disposal or treatment." That phrase clearly circumscribes the types of transactions in hazardous substances to which liability attaches, narrowing liability to transactions in the disposal or treatment of such substances. Adopting Hines' position would be tantamount to carving from § 9607(a)(3) the language limiting liability to those who "arranged for disposal or treatment" of a substance.[2] We find no support in the legislative history or decisional law for this surgical removal of statutory language, and accordingly hold that liability for environmental damage under § 9607(a)(3) attaches only to parties who transact in a hazardous substance in order to dispose of or treat the substance.

Case law interpreting and applying § 9607(a)(3) supports our holding. In a proceeding similar to this action, the court held that a defendant who sold a hazardous substance to another for use in a manufac-

---

2. The broad definition of "hazardous substance" to include more than wastes appears inconsistent with the narrowing language of § 9607(a)(3). Specifically, how can a manufacturer arrange for the disposal or treatment of anything but wastes? By reading "hazardous wastes" in context, the language can be reconciled. Hazardous substances include, *inter alia,* "any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act." 42 U.S. C. § 9601(14)(C). This subparagraph specifies a type of hazardous waste, suggesting that "substance" could mean wastes in a broader nontechnical sense. Many courts discuss CERCLA as if it applies only to hazardous wastes. *See, e.g., United States v. Shell Oil Co.,* 605 F.Supp. 1064 (D.Col.1985). We need not grapple with this semantic distinction since our decision here relies on the provision's express limitation of liability to those who arrange for the disposal or treatment of a substance, regardless of that substance's label as a primary product, by-product or waste product.

turing process and not for disposal is not a responsible party even if the chemical is found in the effluent from that manufacturing process. *U.S. v. Westinghouse Electric Corp.*, 22 Env't Rep.Cas. (BNA) 1230 (S.D.Ind.1983). In that case, the United States filed an action against Westinghouse for response costs resulting from the cleanup of a landfill containing polychlorinated biphenyls ("PCBs"). Monsanto had sold the PCBs to Westinghouse who used them in manufacturing and then deposited the run-off that contained PCBs in the landfill. The court dismissed Westinghouse's third-party complaint seeking contribution from Monsanto because Monsanto sold the PCBs to Westinghouse for use in a manufacturing process. The court found it significant that Westinghouse did not allege that Monsanto made the deal in order to dispose of its own wastes or manufacturing by-products and Monsanto had no control over how Westinghouse disposed of the contaminated effluent. *Id.* at 1233.[3] *Compare United States v. Ward*, 618 F.Supp. 884 (E.D.N.C.1985).

In *United States v. A & F Materials Co., Inc.*, 582 F.Supp. 842 (S.D.Ill.1984), the court found McDonnell Douglas Corporation ("MDC"), who sold a caustic solution to another defendant, to be a responsible party under CERCLA because the motivation for the sale was the disposal of the solution. That the purchaser of the solution used the solution in its own commercial process did not relieve MDC of CERCLA liability. The court stated that the crucial inquiry for establishing liability under § 9607(a)(3) is determining "who decided" the location and method of disposal or treatment of the hazardous substance:

> [L]iability for releases under § 9607(a)(3) is not endless; it ends with that party who both owned the hazardous waste and made the crucial decision how it would be disposed of or treated, and by whom.

*Id.* at 845. Citing this language of *A & F Materials Co.* with approval, the *Conservation Chemical* court stated that "[i]t is precisely that decision that CERCLA was intended to regulate." *Conservation Chemical*, 619 F.Supp. at 240.

We find further support for our holding in the two cases upon which Hines relies to support its more expansive interpretation of § 9607(a)(3). In *New York v. General Electric Co.*, 592 F.Supp. 291 (N.D.N.Y. 1984), the court denied defendant's motion to dismiss by finding that an allegation that the defendant sold used transformer oil in order to dispose of it was sufficient to state a claim of CERCLA liability. The court's analysis centered on defendant's attempt to distinguish the sale of a hazardous substance for disposal from the actual disposal of the substance. The court rejected the distinction, finding that CERCLA liability attaches to the party who makes the decision to dispose of a substance. *Id.* at 297. The court in no way stated or implied that liability attaches to all transactions in a hazardous substance.

In *Conservation Chemical*, also relied upon by Hines, the court denied certain defendants' motions for summary judgment by finding that CERCLA liability attaches to the sale of fly ash for use in a waste disposal and treatment process. The court's reasoning at times seems contradictory. For example, while rejecting defendants' argument that the court should undertake a "legal analysis which requires examination of the primary nature of the transaction from the defendant's viewpoint to determine whether the defendant was acting with the intent to dispose," the court in its conclusion stated that "with testimony that [defendants] owned the hazardous substances *and made the decision how it would be disposed of,* the Court should deny [defendants'] motions (emphasis added)." *Id.* at 241. We believe, after a thorough reading of the decision, that *Conser-*

---

**3.** Hines distinguishes Westinghouse by pointing out that Osmose and the Creosote Defendants knew how Hines disposed of the run-off containing the hazardous substances. This distinction is inconsequential. There is no basis for imposing CERCLA liability on those whose asso-

ciation with a purchaser's disposal technique goes no further than knowledge of the technique. The crucial inquiry for identifying responsible parties under § 9607(a)(3) is the reason for the transaction in the hazardous substance.

*vation Chemical* at most stands for the proposition that summary judgment for a defendant on CERCLA liability is inappropriate when there is some evidence that the motivation behind a transaction was to dispose of a waste or by-product. To the extent that *Conservation Chemical* goes further and would attach liability to any transaction in a hazardous substance, regardless of the motivation behind the transaction, we respectfully disagree with the decision.

■ Applying this analysis to the facts of this case, we find that Osmose and the Creosote Defendants are not responsible parties under § 9607(a)(3). Assuming for purposes of this motion that CCA and creosote are hazardous substances,[4] and recognizing that the holding pond is a "facility" under CERCLA, the mere sale of these substances for use in the wood treatment process does not constitute arranging for the disposal or treatment of a hazardous substance, even when process run-off containing the substances is placed at the same site. The defendants have presented evidence indicating that they sold the substances solely for use in wood treatment and not for the disposal of their own wastes or by-products. Hines has presented no evidence to the contrary. Defendants did not decide how the hazardous substance would be disposed of after its use in the wood treatment process. That they knew or may have known that Hines stored the process run-off in a holding pond at the Mena site does not create a material issue as to their liability. Based on these undisputed facts, neither Osmose nor the Creo-

sote Defendants are responsible parties under § 9607(a)(3),[5] and we grant their motions for summary judgment as to such liability.

### B. Liability of Osmose Under Section 9607(a)(2)

■ Hines opposes Osmose's motion for summary judgment on the additional grounds that there exists a material fact issue as to whether Osmose is a responsible party under the CERCLA provision that attaches liability to

> any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of

42 U.S.C. § 9607(a)(2). "The term 'owner or operator' means ... in the case of an onshore facility or an offshore facility, any person owning or operating such facility...." 42 U.S.C. § 9601(20)(A). Hines seeks to label Osmose an operator of the Mena site from the undisputed facts that Osmose inspected the Mena site prior to the erection of the CCA treatment system, designed, constructed and erected the CCA treatment system to be used in conjunction with the PCP and creosote treatment systems, hooked the plant up in preparation for its operation, trained the Hines personnel who subsequently operated the facility and enjoyed a right of access to the site. We find that these facts if true do not establish that Osmose operated the Mena site within the meaning of § 9607(a)(2).

Again, the clear language of § 9607(a)(2) imposes liability only upon those who actu-

---

**4.** We reject defendants' contention that a chemical sold for use in a manufacturing process cannot be considered a hazardous substance for purposes of establishing § 9607 liability. The statutory definition of hazardous substance is not so limited, 42 U.S.C. § 9601(14), and the courts have recognized that primary products may be hazardous substances. *See, e.g., Conservation Chemical,* 619 F.Supp. at 239.

**5.** Hines alternatively asks that we recognize an implied cause of action against chemical manufacturers who are not responsible parties under CERCLA. Hines provides no support for the rather novel contention that courts may imply a cause of action under a statute against a party not in violation of a statute or liable under any

of its provisions. In the decisions cited by Hines, the courts determined the existence of a private cause of action against parties *in violation of or liable under a statute. E.g., Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). *See also Jones v. Inmont Corp.,* 584 F.Supp. 1425 (S.D.Ohio 1984). *See generally Cannon v. University of Chicago,* 441 U.S. 677, 680 n. 1, 99 S.Ct. 1946, 1949 n. 1, 60 L.Ed.2d 560 (1979). We "will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide," *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981), especially a remedy against parties not liable under the statute.

ally operate a "facility" within the meaning of CERCLA. It does not include the designer or builder of a manufacturing system at a site containing the facility. Hines has not directed our attention to any decisions that attach operator liability to any chemical manufacturer other than those who actually operated the facility or enjoyed some control over the operation of the facility. The decisions imposing § 9607(a)(2) liability limit their reach to actual operators of a facility. *See, e.g., Conservation Chemical, supra; New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985). The decisions uniformly found that Congress intended to impose liability on those parties responsible by omission or commission for environmental contamination caused by hazardous substances at a facility such as a holding pond. Only those who actually operate or exercise control over the facility that creates an environmental risk can be held liable under CERCLA for the costs of reducing that risk.

Applying these principles to this case, we conclude that Osmose is not a responsible party under § 9607(a)(2). The extent of Osmose's involvement went no further than building the treatment system and training personnel in its operation. Hines has presented no evidence that Osmose ever operated the Mena site wood treatment facility or, more significantly, exercised any control over the disposal of process run-off into the holding pond. The right of access and occasional presence of Osmose personnel pursuant to the Hines–Osmose Agreement does not provide evidence that Osmose ever operated the plant or controlled the process by which run-off was placed in the holding pond. Having failed to present evidence to create a factual issue of whether Osmose was an operator of the Mena site, and finding on the undisputed facts that Osmose is not a responsible party under § 9607(a)(2), we grant Osmose's motion for summary judgment as to its liability under CERCLA.

## IV

### Liability Under State Law

Hines contends that if the defendants are not responsible parties under CERCLA, it may still seek contribution under state law to recover the response costs incurred in decontaminating the Mena site. We agree that CERCLA does not bar Hines from seeking recovery under available state law remedies. Congress expressly provided that CERCLA does not divest parties injured from hazardous substances of any causes of action that do not fall within CERCLA:

> Nothing in this subchapter ... shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

42 U.S.C. § 9607(e)(2). Similarly,

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.

42 U.S.C. § 9652(d). These provisions do not distinguish between causes of action to recover for damage from personal or property injury and claims such as Hines' to recover costs incurred in the cleanup of a contaminated site.

Despite these provisions, defendants contend that CERCLA precludes any cause of action under state law in which a plaintiff seeks contribution for the costs incurred in cleaning up a site containing hazardous substances. The gravamen of defendants' position is that a party incurring costs at the request of an EPA–ordered hazardous waste site cleanup can recover those costs only under federal law and therefore only from responsible parties under federal law. Defendants cite a litany of cases that they contend support this proposition. We do not read these cases so expansively as contradicting the language of the above-quoted statutory provisions. In the cases cited by defendants, the courts held that federal common law rather than state law determines the availability of an action for contribution *against parties that are liable under CERCLA. Wehner v. Syntex Agri-*

*business, Inc.*, 616 F.Supp. 27, 31 (E.D.Mo. 1985); *Colorado v. ASARCO, Inc., supra; U.S. v. Ward, supra; United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 808–09 (S.D.Ohio 1983). The courts did not state or suggest that CERCLA preempts any state law remedies to recover the costs of site cleanup from parties who are not liable under CERCLA but are potentially liable under state law. Indeed, in *Conservation Chemical,* a case relied upon by the defendants in this context, the court suggested the contrary of defendants' position:

> Congress did not intend to preclude actions under CERCLA for contribution, but rather intended that the scope of liability for contribution under 42 U.S.C. § 9607 be determined as a matter of federal common law, by superseding *or supplementing existing state remedies.*

(Emphasis added). 619 F.Supp. at 229.

■ Accordingly, we hold that CERCLA does not bar an action available under state law for contribution for costs incurred as a result of the decontamination of a hazardous waste site against parties not liable for contribution under CERCLA. We have already held, in the previous section of this order, that the undisputed facts demonstrate that Osmose and the Creosote Defendants are not responsible parties under CERCLA and thereby escape CERCLA liability. Therefore, Hines may seek contribution to the extent that state law provides a remedy.

■ Defendants further contend, assuming *arguendo* that CERCLA does not preempt state law remedies, the undisputed facts establish as a matter of law that the defendants are not liable under state law.[6] The only state remedy for contribution available to Hines, defendants suggest, arises under the Uniform Contribution Among Tortfeasors Act as adopted by Ar-

kansas. Ark.Stat.Ann. § 34–1001 *et seq.* (1962).[7] To prevail under that statute, "there must be common liability to an injured party, and the injured party must have a possible remedy against both the party seeking contribution and the party from whom it is sought." *Welter v. Curry,* 260 Ark. 287, 298, 539 S.W.2d 264, 271 (Ark.1976). Since the United States, the "injured party" in this case, has no cause of action against Osmose or the Creosote Defendants under CERCLA, Hines, "the party seeking contribution," cannot recover contribution from those defendants.

Defendants correctly interpret and apply Arkansas law and have accordingly satisfied their burden as moving party. The burden then shifts to Hines, the opposing party, to identify evidence in the record that creates a genuine issue of material fact and that if found to be true at trial, establishes the defendants' liability. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Hines has failed to meet this burden. Hines does not identify in its complaint or responsive pleadings the state law remedy that forms the basis of Counts VI and IX, so we presume that the Arkansas Contribution Statute provides the sole remedy. Hines must therefore identify evidence that creates a factual dispute of whether Osmose and the Creosote Defendants would be liable to the United States for any portion of the costs incurred in decontaminating the Mena site. Hines has failed to do so. Hines presents no facts beyond those it sets forth to demonstrate the defendants' liability under CERCLA. Since we have already established that defendants are not responsible parties under CERCLA, and Hines presents no other basis for defendants' liability to the United States, Hines has failed to satisfy its burden in opposing summary judgment. Accordingly, we

---

6. Osmose, Reilly Tar & Chemical Corp., Allied Corp., and Koppers Co., Inc. set forth these contentions by adopting Monsanto Co.'s August 11, 1986 motion to dismiss or for summary judgment. Osmose's Motion to Dismiss or for Summary Judgment at 3; Memorandum of Law in Support of Motion of [certain Creosote Defendants] to Dismiss Plaintiff's Amended Complaint at 4–5. Bernuth Lembcke set forth these

contentions by adopting its September 8, 1986 motion to dismiss or for summary judgment. Motion to Dismiss the Amended Complaint or Alternatively for Summary Judgment at 2.

7. Hines did not dispute defendants' assumption that Arkansas law governs Hines' state law claims.

grant summary judgment as to Osmose and the Creosote Defendants' liability under state law.

## V

### Conclusion

Remaining defendants Reilly Tar & Chemical Corp., Bernuth Lembcke Co., Inc., Allied Corporation, Koppers Company, Inc. and Osmose Wood Preserving Co. of America, Inc.'s motions for summary judgment as to Counts VI and IX are granted. It is so ordered.