AKZO COATINGS, INC. and the O'Brien Corporation, Plaintiffs,

v.

AIGNER CORP.; American Can Company; Dexter Corp.; Duplicolor Products Co.; Graham Paint & Varnish Co., Inc.; Illinois Bronze Paint Co.; IVC Industrial Coatings, Inc.; Motorola, Inc.; Prefinish Metals, Inc.; Reynolds Metals Co.; Rollcoater; S & C Electric Co.; Sherwin Williams Co.; Sullivan Varnish; Valspar, Inc.; Vista Products, Inc.; Whittaker Corp.; Bee Chemical Co.; CFC International, Inc.; and Coated Film Company, Defendants.

No. S91–570M.

United States District Court,
N.D. Indiana,
South Bend Division.

July 31, 1992.

Timothy W. Woods, South Bend, Ind., Timothy L. Harker, Colleen M. Morgan, Gary R. Letcher, Washington, D.C., for plaintiffs.

Pierre C. Talbert, Chicago, Ill., for defendants Aigner Corp., American Can Co., Dexter Corp., Duplicolor Products Co., Graham Paint & Varnish Co., Inc., Illinois Bronze Paint Co., Motorola, Inc., Prefinish Metals, Inc., Reynolds Metals Co., Rollcoater, S & C Elec. Co., Sherwin Williams Co., Valspar, Inc., Whittaker Corp.

James H. Milstone, Mishawaka, Ind., Philip B. McKiernan, Indianapolis, Ind., for defendant IVC Industrial Coatings, Inc.

Richard Paulen, Elkhart, Ind., for defendant Rollcoater.

David M. Brooks, Matthew R. Clark, Indianapolis, Ind., for defendant Vista Products, Inc.

Thomas T. Terp, Robert A. Bilott, Cincinnati, Ohio, for defendant Bee Chemical Co.

G. Craig Vincent, Valparaiso, Ind., for defendants CFC Intern., Inc., Coated Film Co.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the motion to dismiss filed by defendants Aigner Corp., American National Can Co., The Dexter Corp., Duplicolor Products Co., Graham Paint & Varnish Co.; Inc., Illinois Bronze Paint Co., Motorola, Inc., Prefinish Metals, Inc., Reynolds Metals Co., Roll Coater, Inc., S & C Electric Co., Sherwin Williams Co., Valspar, Inc., Whittaker Corp., and Morton International, Inc., on behalf of Bee Chemical Co—Lansing & Armstrong Products (collectively "RD/RA Settling Defendants"). On May 19, 1992, the court converted the motion to dismiss to one for summary judgment. The court heard oral argument on the motion on July 30. For the reasons that follow, the court concludes that the motion should be GRANTED.

The plaintiffs brought this action against the RD/RA Settling Defendants and others pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), and the Superfund Amendments and Reauthorization Act ("SARA"), 42 U.S.C. §§ 9607(a) and 9613(f), and state common law to recover the costs incurred in undertaking environmental cleanup measures at the Fisher–Calo Chemicals and Solvents Corporation facility in Kingsbury, Indiana ("the facility").

Counts I and IV are brought pursuant to 42 U.S.C. § 9607(a) for statutory response costs; Counts II and V are for contribution pursuant to 42 U.S.C. § 9613(f) that eight of the RD/RA Settling Defendants and other defendants are liable under §§ 9607(a) and 9613(f) and state common law for costs the plaintiffs incurred as a result of the release and threatened release of hazardous substances.

## Background

The complaint, amended complaint, and the parties' briefs on the previously filed motion to stay, as well as this motion, set forth the following factual background.

The Fisher–Calo facility had been the subject of investigation by the United States Environmental Protection Agency ("EPA") and the Indiana State Board of Health ("ISBH"), both of which had found numerous violations in the handing and storage of hazardous wastes at the facility. From 1970 to 1986, Fisher–Calo Chemicals and Solvents Corp. used the facility to distill industrial solvents and store residues from the distillation process. ("stillbottoms"). During those years, the facility received millions of gallons of chemicals from more than 200 businesses. Throughout most of this time, the ISBH and the EPA reported contamination of the soil and groundwater at the facility. In 1983, the EPA designated the facility a Superfund site pursuant to 42 U.S.C. § 9605, and in 1985, the EPA began a remedial investigation and feasibility study to select the most cost effective cleanup measures. In August 1990, the EPA's Record of Decision ("ROD") set forth its selection of remedial alternatives; these alternatives are estimated to cost $40 million and are expected to take thirty years to complete.

In December 1988, the EPA issued an administrative order ("AO") pursuant to 42 U.S.C. § 9606, addressing the hazardous substances treated or disposed of at the Fisher–Calo Two–Line Road facility. This AO identified thirteen potentially responsible parties ("§ 106 PRPs"). Amendments to the AO added another twelve § 106 PRPs. The AO required the § 106 PRPs to develop a plan to sample and remove waste drums and dispose of contaminated soils. Most of the § 106 PRPs, including the plaintiffs, agreed to finance and implement the measures required in the AO. To that end, those § 106 PRPs signed a cost sharing and allocation agreement, which included a provision that they would not sue each

other for cleanup costs incurred as a result of implementing the AO's requirements. By December 1991, these § 106 PRPs had incurred $6 million in costs.

Approximately 200 additional companies ("RD/RA PRPs") were notified in October 1990 that they were liable for past, present, and future cleanup measures required by the ROD. Thirty-five of these RD/RA PRPs entered into a cost sharing and allocation agreement to finance some of the cleanup measures.

In August 1991, the EPA and the State of Indiana entered into a consent decree with the RD/RA Settling Defendants and others, which provided that the RD/RA Settling Defendants and others would finance and implement a $40 million cleanup project and pay the EPA $3.1 million for past cleanup costs. This consent decree was lodged with this court as *United States v. Accurate Partitions Corp., et al.*, Cause No. S91–646M, on December 30, 1991. The consent decree required the defendants to undertake investigation and remedial action at the Space Leasing facility, the One–Line Road facility, the New Plant Life facility, the Two–Line Road facility, and the "Mt. Fisher" facility. The plaintiffs in this action are not parties to the consent decree.

### Standard of Review for Motions for Summary Judgment

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Duane v. Lane*, 959 F.2d 673, 675 (7th Cir.1992). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If he fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 320 (7th Cir. 1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991).

The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Prince v. Zazove*, 959 F.2d 1395, 1398 (7th Cir.1992), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Kizer v. Children's Learning Center*, 962 F.2d 608, 611 (7th Cir.1992).

The court will address the defendants' motion with the above standards in mind.

### Discussion

■ The RD/RA Settling Defendants claim that the *Accurate Partitions* consent decree protects them against the plaintiffs' claims in this action by virtue of 42 U.S.C. § 9613(f)(2), which provides:

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settle-

ment does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

The consent decree specifically provides that each named defendant is entitled to protection from contribution actions relating to the facility, pursuant to 42 U.S.C. § 9613(f)(2) and/or 42 U.S.C. § 9622(g)(5).

Section 9613(f)(2) is designed to promote timely, voluntary settlements with the EPA and the states, and effectuate cleanup of hazardous wastes. *Central Illinois Public Service Co. v. Industrial Oil Tank & Line Cleaning Service,* 730 F.Supp. 1498, 1502–05 (W.D.Mo.1990); *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1026–29 (D.Mass.1989). Therefore, the protection afforded by § 9613(f)(2) to settling parties has been extended to claims arising under state law as well as under CERCLA. *United States v. Alexander,* 771 F.Supp. 830, 840 (S.D.Tex.1991); *Central Illinois Public Service Co. v. Industrial Oil Tank & Line Cleaning Service,* 730 F.Supp. at 1504–05.

The RD/RA Settling Defendants claim that the matters addressed in the consent decree are the same as those addressed in this action and, therefore, dismissal of the complaint as to each RD/RA Settling Defendant is appropriate.

In April 1990, the EPA published a remedial action plan ("the plan") to address the hazardous substances contamination at the facility. The *Accurate Partitions* consent decree provides that the RD/RA Settling Defendants and others will finance and implement the plan. The plan calls for the design, construction, and implementation of several projects, including the incineration of soils, soil flushing or soil vapor extraction, groundwater collection, treatment and discharge, installation of a groundwater monitoring well system and a production well, and the removal of certain drums and containers. Implementation of the plan will cost approximately $32 million and take at least thirty years.

The *Accurate Partitions* consent decree also requires the RD/RA Settling Defen-

dants and others to pay a share of the response costs incurred by the EPA and the State, and a share of the costs to restore the facility's natural resources. The total share of these costs is approximately $3.3 million. The consent decree further requires the RD/RA Settling Defendants and others to pay the EPA and the State their future costs in monitoring implementation of the plan. In exchange for the RD/RA Settling Defendants' performance under the consent decree, the EPA and the State have agreed not to sue the RD/RA Settling Defendants and the other signatories of the consent decree for any CERCLA claims that relate to the facility. The EPA and the State have also agreed that the RD/RA Settling Defendants and others are entitled to contribution protection under §§ 9613(f) and 9622(g)(5) as to any claims by nonsettling parties that relate to the site.

The purpose of § 9613 is "to encourage settlements and expedite the cleanup of hazardous waste sites." *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488, 1493 (S.D.Ohio 1991). To this end, the statute insulates a potentially liable party who has settled a CERCLA action with the United States from liability to a potentially responsible party who has not settled. *United States v. Cannons Engineering Corp.,* 899 F.2d 79, 91 (1st Cir.1990); *United States v. Alexander,* 771 F.Supp. at 834; *Comerica Bank–Detroit v. Allen Industries, Inc.,* 769 F.Supp. 1408, 1410 (E.D.Mich.1991) ("The terms of § 113(f)(2) make it clear that [contribution claims] do not survive the settlement between the State and [the defendant]."); *United States v. Union Gas Co.,* 743 F.Supp. 1144, 1152 (E.D.Pa.1990) ("The carrot the EPA can offer potential settlors is that they no longer fear that a later contribution action by a non-settlor will compel them to pay still more money to extinguish their liability."); *Allied Corp. v. Frola,* 730 F.Supp. 626, 638 (D.N.J.1990).

Section 9613 was designed to ensure that a settling, potentially responsible party would not have to pay twice. The protection afforded under § 9613(f) is limited to

the subject matter of the settlement between the potentially responsible party and the United States or the State. As the court stated in *Pretty Products:*

> The claims for contribution are barred only to the extent they regard "matters addressed in the settlement." § 9613(f)(2). In determining whether a claim is made regarding matters not addressed in the settlement, a court must consider various factors, including the particular hazardous substance at issue in the settlement, the location or site in question, the time frame covered by the settlement, and the cost of the cleanup. *See [United States v. Union Gas Co.,]* 743 F.Supp. at 1154. For instance, where disposal of hazardous wastes is continuing, a settlement may purport to cover a limited time period only. In such a situation, a claim for contribution may survive a settlement *to the extent* it seeks contribution for disposals occurring outside of the settlement time period.

*United States v. Pretty Products, Inc.,* 780 F.Supp. at 1494–95 n. 4 (emphasis in original).

The RD/RA Settling Defendants claim that they have settled their CERCLA liability as to all matters relating to the release and threatened release of hazardous substances at the facility. They note that the hazardous substances said to have been released are not identified or particularized in the complaint in this action or in the *Accurate Partitions* consent decree. Therefore, both the consent decree and this action encompass all hazardous substances found at the facility. The complaint in this action alleges that the release or threatened release of hazardous substances occurred between 1972 and 1986, and the consent decree encompasses the same period. The RD/RA Settling Defendants claim that the costs they have incurred and will incur pursuant to the consent decree relate to the costs the plaintiffs' claim in this action; both types of costs are to abate contamination at the facility.

The RD/RA Settling Defendants also claim that the state law claims against them must be dismissed because § 9613(f) insulates them from state common law liability arising out of the same facts as the contribution claims under CERCLA. In *United States v. Pretty Products,* the court determined that the state law claim for indemnity against the settling party was "merely a disguised claim for contribution" because it was not based on an agreement between the parties. 780 F.Supp. at 1495. Absent an agreement, the indemnity claim was an equitable claim, which was barred by CERCLA. 780 F.Supp. at 1495–96. The court also determined that the same reasoning disposed of all equitable claims against the settling parties.

> Congress's intent to encourage quick settlements of CERCLA actions would be utterly frustrated if non-settling parties were allowed to pursue equitable state restitutionary claims—which differ from contribution claims in form but not substance—against settling parties. This Court cannot allow state claims to circumvent the obvious intent of Congress.

*United States v. Pretty Products,* 780 F.Supp. at 1496. *See also Central Illinois Public Service Co. v. Industrial Oil Tank & Line Cleaning Service,* 730 F.Supp. at 1505–08; *United States v. Cannons Engineering Corp.,* 720 F.Supp. 1027, 1051 (D.Mass.1989), *aff'd,* 899 F.2d 79 (1st Cir. 1990).

The plaintiffs contend that § 9613(f)(2) will not protect the RD/RA Settling Defendants in this action because the matters covered by the settlement differ from those covered in this action. In *Allied Corp. v. Frola,* 730 F.Supp. at 638, the court found that § 9613(f)(2) did not protect settling parties against contribution claims for costs that were inconsistent with the consent order or for non-CERCLA liability. The *Frola* court denied summary judgment because it was possible that a catchall phrase might seek to recover costs outside the scope of the order. In *United States v. Union Gas Co.,* 743 F.Supp. at 1153–54, the court found that the subject matter of the consent decree did not encompass any response costs incurred after January 24, 1985. Therefore, it did not appear to cover the same subject matter as the complaint,

which alleged that hazardous waste disposal "continues to be permitted". 743 F.Supp. at 1154.

This action is to recover response costs the plaintiffs incurred implementing remedies that were under way before the EPA incurred costs covered in the consent decree. The plaintiffs claim that they have led the way in the cleanup efforts and incurred more than $1,250,000.00 in response costs. Therefore, they argue, they are not like the "recalcitrant" potentially responsible parties who refuse to settle with the EPA and later seek contribution from settling parties.

The complaint alleges that the plaintiffs incurred response costs in connection with two activities: the requirements of the 1988 Administrative Order issued against the plaintiffs, and the plaintiffs' voluntary investigation of contamination and related activities at the facility. On the other hand, the *Accurate Partitions* consent decree addresses two other matters: prospective implementation of the Remedial Design and Remedial Action selected by the EPA in the 1990 Record of Decision, and payment of specific response costs incurred and to be incurred by the EPA.

The proper inquiry for determining whether a consent decree covers the same subject matter as a contribution claim is a comparison of the "particular hazardous substances at issue in the settlement, the location of the site in question, the time frame covered by the settlement, and the cost of the cleanup." *United States v. Union Gas Co.*, 743 F.Supp. at 1154. Under this analysis, the RD/RA Settling Defendants argue, the subject matter of the consent decree is the same as the subject matter of the complaint in this action.

The plaintiffs claim that the cleanup action undertaken pursuant to the AO was not a matter addressed in the RD/RA Settlement Agreement. The AO was issued more than three years before the *Accurate Partitions* consent decree was entered, and the response actions prescribed in the AO were completed before the EPA issued the ROD that is the basis of the consent decree. The plaintiffs argue that the complaint seeks recovery for matters addressed in the AO, which are different from the matters addressed in the *Accurate Partitions* complaint and consent decree. The plaintiffs also allege that they incurred costs in addition to those incurred pursuant to the AO. The latter costs were incurred voluntarily and not encompassed in the consent decree. The voluntary response actions were undertaken more than eighteen months before the consent decree was lodged with the court.

The RD/RA Settling Defendants argue that the claims in this case arise out of the same subject matter as that addressed in the *Accurate Partitions* consent decree; the subject matter of both is the response costs incurred as a result of the release of hazardous substances at the facility. The RD/RA Settling Defendants argue that even if the plaintiffs have borne a disproportionate share of the response costs, § 9613(f)(2) bars them from seeking contribution. In *United States v. Union Gas Co.*, 743 F.Supp. at 1152, the court noted that, "The language of CERCLA plainly envisions the likelihood of resultant disproportionate liability." The RD/RA Settling Defendants further argue that the plaintiffs' voluntary response is irrelevant, and note that they, too, have incurred response costs pursuant to a cost sharing agreement executed by the RD/RA Settling Defendants, the plaintiffs, and others.

The plaintiffs claim that a settlement with the government cannot resolve a settling party's liability to third parties, as the government cannot resolve claims it does not own. The RD/RA Settling Defendants claim that these are misstatements of the law. In *United States v. Cannons Engineering Corp.*, 899 F.2d at 92, the court stated that "Congress plainly intended nonsettlors to have no contribution rights against settlors regarding matters addressed in settlement." The RD/RA Settling Defendants argue that under the plaintiffs' interpretation, no party would be entitled to the protection of § 9613 because the government will never own or possess a third-party's contribution claim.

The plaintiffs argue that their claims in this action are not for contribution, but for statutory recovery of the response costs the plaintiffs have already incurred. They claim that investigation revealed that they were not responsible for contamination at the facility. Therefore, they are not "joint tortfeasors" seeking contribution; they are seeking recovery of all the costs they incurred because they should not be held liable for any costs. The plaintiffs cite the district court's description of contribution in *United States v. Cannons Engineering Corp.*, 720 F.Supp. at 1051, as "the method by which a tortfeasor sues a joint tortfeasor for its share of joint liability."

The RD/RA Settling Defendants note that the complaint describes Counts II and V as claims for contribution pursuant to § 9613(f). Further, a "covered person" for purposes of cost recovery under 42 U.S.C. § 9607(a) is one who is potentially liable for contribution, according to the parties' relative fault. The extent of a party's liability under § 9613 comes into play after the party is found responsible under § 9607(a). *Environmental Transportation Systems, Inc. v. ENSCO, Inc.*, 763 F.Supp. 384, 388–89 (C.D.Ill.1991).

The RD/RA Settling Defendants argue that the plaintiffs' claims are in the nature of contribution, and that any assertion to the contrary is an attempt to circumvent the protective provisions of CERCLA. They note that the facts underlying the claims, and not the parties' characterizations of the claims, determines whether § 9613(f)(2) applies. *United States v. Pretty Products*, 780 F.Supp. at 1496 n. 7 ("[T]his Court would be skeptical of any attempt to make an end run around CERCLA's contribution immunity.").

The plaintiffs argue that the matters addressed in the *Accurate Partitions* consent decree differ from those for which the plaintiffs seek recovery in this action. The consent decree does not encompass or acknowledge the action taken by the plaintiffs pursuant to the AO and § 9606. The plaintiffs claim that the time frames of the matters addressed in the consent decree and this action differ; this action addresses a response that was completed before the consent decree was lodged, and the consent decree provides for prospective remedial action. The plaintiffs claim that the location of the matter addressed in the consent decree also differs from the location of the matters addressed in this action; this action addresses a response at the Two–Line facility only, and the consent decree addresses action at the various facilities. Finally, the cost expected to be incurred pursuant to the consent decree does not include the cost incurred by the plaintiffs in carrying out the AO.

The RD/RA Settling Defendants note that the consent decree defines the facility as the location where treatment, storage, disposal, or other placement of hazardous substances was conducted by Fisher–Calo Chemical Company, and those areas where such substances have come to be located, which facility is located in the Kingsbury Industrial Development Park, LaPorte County, State of Indiana, and includes the "Fisher–Calo Chemical Corporation site" as that term is used in the Record of Decision and Scope of Work. The Record of Decision describes the site as "the One–Line Road, Two Line Road and Space Leasing facilities within the Kingsbury Industrial Development Park." Therefore, the location covered by the consent decree includes the location covered by this action.

The costs incurred pursuant to the consent decree include reimbursement for the EPA's response costs incurred between 1981 and 1990, the past response costs incurred by the State of Indiana, and response costs incurred by the EPA and the State after December 31, 1990. The past costs claimed by the EPA in the consent decree include costs incurred by the EPA pursuant to the AO. The RD/RA Settling Defendants claim that paragraphs 88 and 92(c) of the consent decree address the costs to comply with the AO and the costs incurred pursuant to an interim cost-sharing agreement, and are the same costs sought in this action.

The plaintiffs claim that their state law based claims in this action are not precluded by the CERCLA protection in

§ 9613(f)(2). Counts III and IV seek common law restitution, and the plaintiffs claim that these counts do not go to the same subject matter as the consent decree. The court in *United States v. Union Gas Co.*, 743 F.Supp. at 1155, stated that, "Until the court is satisfied that the state law counts address the same subject matter as the settlement, the court cannot support a finding of preemption." The plaintiffs claim that the court cannot determine until trial whether CERCLA's protective provisions bar the state law claims in this action.

The plaintiffs also contend that they are entitled to relief for matters other than those addressed in the consent decree. They seek common law restitution for costs they incurred. Under CERCLA, a condition precedent to recovery under 42 U.S.C. § 9607(a)(4)(B) is a showing that the costs incurred were necessary and consistent with the national contingency plan, but there is no such condition precedent to recovery under common law restitution. In *Allied Corp. v. Frola*, 730 F.Supp. at 638, the court agreed with the argument that § 9613(f)(2) did not preclude a claim for costs inconsistent with the consent order or for non-CERCLA liability. The court found, however, that contribution claims pursuant to the New Jersey Joint Tortfeasor Contribution Act, N.J.S.A. § 2A:53A–1, were barred to the extent that they addressed matters addressed in the consent decree.

The RD/RA Settling Defendants argue that § 9613 bars any claims arising under state law if they arise from the same subject matter as the settlement with the government; to find otherwise would undermine the purpose of § 9613. In *United States v. Pretty Products*, 780 F.Supp. at 1494 n. 3, the court concluded that state and federal contribution claims must be dismissed, but the court limited this holding to those claims that involved matters addressed in the consent decree. In *United States v. Alexander*, 771 F.Supp. 830, the court rejected the argument that a party may pursue contribution under state law notwithstanding the protection of § 9613:

> Where a party is not liable under CERCLA, then state law contribution remedies

to the extent they exist may be pursued against those parties. However, it is inconceivable to this Court that Congress, wanting to encourage parties to settle early with the Government, would so carefully fashion protections against contribution claims under CERCLA, but then leave those same parties exposed to similar liability by allowing similar state law contribution schemes to be pursued.... This court expressly ... concludes that where a party is liable under CERCLA, and has entered into an approved settlement with the Government, affording it the protections from contribution found in 42 U.S.C. § 9613(f)(2) & § 9622(g)(5), that state law contribution remedies may not be pursued against that party.

*United States v. Alexander*, 771 F.Supp. at 841.

The RD/RA Settling Defendants claim that because the plaintiffs did not join in the consent decree, they may not offset the costs they would have incurred to implement the terms of the consent decree. This contention is supported by the language of § 9613(f)(2) ("Such settlement does not discharge any of the other potentially liable persons unless its terms so provide...."), and (f)(3). If the court does not grant summary judgment, the RD/RA Settling Defendants will have to pay twice for the actions undertaken pursuant to the AO.

■ In *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, 657–58 (N.D.Ill.), *aff'd*, 861 F.2d 155 (7th Cir.1988), the court allowed the plaintiff to seek contribution under state law against parties who were not liable for contribution under CERCLA. The court determined that the manufacturers of hazardous chemicals were not liable under 42 U.S.C. § 9607(a)(3) because they had not arranged for disposal or treatment of hazardous substances, and that the manufacturers were not liable under 42 U.S.C. § 9607(a)(2) because they were not owners or operators of a facility which disposed of hazardous substances. Therefore, the manufacturers

were not responsible parties under CERCLA. *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. at 654–58.

In this case, the RD/RA Settling Defendants have admitted that they are responsible parties under CERCLA. However, they are relieved of liability by virtue of the consent decree and § 9613(f)(2), which protects "[a] person who has resolved its liability". Therefore, the RD/RA Settling Defendants are afforded the protection against state law contribution claims that was not available to the defendants in *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. at 658. *See also United States v. Pretty Products*, 780 F.Supp. at 1494 n. 3; *United States v. Alexander*, 771 F.Supp. at 841.

#### Conclusion

For the foregoing reasons, the court hereby GRANTS the motion for summary judgment as to the claims against the RD/RA Settling Defendants in this action.

SO ORDERED.