**CROWN CORK & SEAL COMPANY, INC. and Clark Equipment Company, Plaintiffs,**

v.

**John C. DOCKERY, et al., Defendants.**

No. 3:92CV00744.

United States District Court, M.D. North Carolina, Rockingham Division.

Feb. 15, 1995.

Robert J. Morris, Thomas N. Barefoot, L. Neal Ellis, Jr., Raleigh, NC, Daniel W. Fouts, Greensboro, NC, for plaintiffs.

P. Wayne Robbins, Pinehurst, NC, Walter E. Brock, Jr., Raleigh, NC, Elizabeth M. Powell, Raleigh, NC, R. Thompson Wright, Greensboro, NC, J. Richard Kelly, Greenville, SC, Rita A. Sheffey, Atlanta, GA, Mark A. Finkelstein, Raleigh, NC, Rosemary G. Kenyon, Raleigh, NC, Robert A. Ford, Greensboro, NC, Sanford L. Steelman, Jr., Monroe, NC, Richard E. Fay, Charlotte, NC, Donald M. Dawkins, Rockingham, NC, for defendants.

Daniel S. Cohen, pro se.

## MEMORANDUM OPINION

TILLEY, District Judge.

This action arises out of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs, Crown Cork & Seal Company, Inc. ("Crown Cork") and Clark Equipment Company ("Clark") seek to dismiss the counterclaims filed by Defendant, The Timken Company ("Timken") in answer to Crown Cork and Clark's original complaint. For the reasons that follow, Crown Cork and Clark's joint motion to dismiss these counterclaims is GRANTED.

### I.

During the mid–1970's and early 1980's, two parcels of real property in Richmond County, North Carolina, a sixteen (16) acre parcel located 1.6 miles southwest of Cordova ("Macon site") and a one (1) acre parcel of real property located nearly adjacent to the Macon site ("Dockery site") were used as waste disposal and oil recycling facilities. Waste oil, used solvents, and numerous other chemical wastes were delivered to the Macon and Dockery sites for treatment, processing, disposal, and recycling. In late 1983 and early 1984, the Environmental Protection Agency ("EPA"), pursuant to CERCLA, initiated removal actions in which it removed hazardous substances from both the Macon and Dockery sites. In 1986, the United States instituted a civil action against Crown Cork and Clark, alleging that there were continued and threatened releases of hazardous substances at the Macon and Dockery sites and that Crown Cork and Clark were liable under CERCLA for the response costs. *See United States v. Dorothy H. Macon et al.,* Civil Action No. C–86–623–R. In 1988, Crown Cork and Clark entered into an Administrative Order By Consent with the EPA in which both Crown Cork and Clark agreed to perform a Remedial Investigation and Feasibility Study ("RI/FS") of the Macon and Dockery sites. Crown Cork and Clark also agreed to reimburse the EPA for oversight of the RI/FS. As a result of the RI/FS, Crown Cork and Clark allegedly incurred necessary response costs consistent with the National Contingency Plan ("NCP").

Eventually, in 1989, Crown Cork and Clark, along with twelve other parties, entered into a Consent Decree with the United States in order to resolve their liability for all response costs of the United States incurred at the Macon and Dockery sites up to and including December 5, 1989. Under the terms of the Consent Decree, Crown Cork

and Clark each agreed, *inter alia,* to pay $600,000 to the United States in reimbursement of the "Covered Response Costs" incurred by the United States with respect to the Macon and Dockery sites up to and including December 5, 1989. Under the Consent Decree, "Covered Response Costs" were defined to include:

> all costs of response including but not limited to, administrative, investigative, removal, remedial, access, enforcement (including attorneys' fees), and oversight costs, prejudgment interest on any and all such costs, and all other direct or indirect costs, however denominated, alleged to have been incurred by the United States pursuant to CERCLA, the Clean Water Act or any other federal or state statute, rule or regulation up to and including the Date of Entry of this Consent Decree in connection with the Macon and Dockery sites.

"Covered Response Costs" were not to include:

> enforcement costs, all other direct or indirect costs, or any oversight costs relating to or resulting from the Remedial Investigation/Feasibility Study (RI/FS) at the Macon or Dockery sites, being conducted pursuant to the Administrative Order by Consent, EPA Docket No. 88–23–C, unless such RI/FS costs are included in the total settlement amount set forth in Section IV.A of this Decree, and were included in the cost documentation prepared by the United States and given to the Settling Defendants in connection with *United States v. Dorothy H. Macon, et al.,* Civil Action No. C–86–623–R.

In addition, Section VII.A. of the Consent Decree, entitled "Contribution Protection," stated that "[t]he Settling Defendants have resolved their liability to the United States for Covered Response Costs and shall not be liable for claims for contribution for Covered Response Costs, except to the extent provided in Section VIII.D."[1] The Consent Decree was approved and entered by this Court on December 5, 1989.

In 1992, the EPA issued a Unilateral Administrative Order to Crown Cork and Clark which required, *inter alia,* the performance of remedial design and remedial action ("RD/RA") at the Macon and Dockery sites consistent with the NCP and under EPA oversight. Crown Cork and Clark allegedly incurred costs and will continue to incur costs for performance of the RD/RA.

On December 4, 1992, Crown Cork and Clark filed a complaint against some twenty defendants, including Timken, seeking contribution for the monies paid to the United States pursuant to the December 5, 1989 Consent Decree. Crown Cork alleged that Timken was a party who allegedly arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances. On May 21, 1993, Timken filed its answer to Crown Cork and Clark's complaint. In its answer, Timken denies liability. Alternatively, Timken contends that, if liable, it has a statutory right of contribution under 42 U.S.C. § 9613(f)(1) from each Plaintiff for all damages, costs, response costs, and all other relief demands in the complaint. In addition, Timken alleges a common law right to contribution and indemnity from each Plaintiff for all damages, costs, response costs, and all other relief requested in the complaint. On June 14, 1993, Crown Cork and Clark filed this motion to dismiss, arguing that 42 U.S.C. § 9613(f)(2) bars Timken's counterclaims. Although Timken filed for an extension of time in which to respond to Crown Cork and Clark's motion to dismiss (which was granted), it never filed a response. Subsequently, on July 18, 1994, Crown Cork and Clark amended its original complaint, adding a claim for recovery of the RI/FS and RD/RA response costs pursuant to 42 U.S.C. § 9607(a) and a request for a declaratory

---

1. Section VIII.D of the Consent Decree states: Nothing herein shall bar or affect claims for indemnification or contribution brought against Settling Defendants by signatories to the Administrative Order By Consent, EPA Docket No. 88–23–C, or by Settling Defendants against other Settling Defendants and/or signatories to the Administrative Order By Consent, for all costs relating to or resulting from the conduct of the RI/FS.

   Since Timken is not a signatory to the Administrative Order By Consent, this provision is not relevant to this action.

**150**

judgment against all Defendants holding that each Defendant is jointly and severally liable to pay all of Plaintiffs' future necessary response costs consistent with the NCP. On August 4, 1994, Timken filed its answer to Crown Cork and Clark's amended complaint, asserting similar denials and counterclaims as in its original answer.[2]

## II.

■ The legal standard for dismissal of a counterclaim is the same as that for dismissal of a complaint. *See United States v. Union Gas Co.*, 743 F.Supp. 1144, 1150 (E.D.Pa. 1990). Therefore, dismissal of Timken's counterclaim is appropriate only if accepting as true all well-pleaded allegations, and, viewing the counterclaim in a light most favorable to Timken, it appears certain that Timken cannot prove a set of facts which would entitle it to relief. *See Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

Under CERCLA, Congress created an express right of contribution among parties found liable for response costs. *See* 42 U.S.C. § 9613(f)(1). However, 42 U.S.C. § 9613(f)(2) states that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." Thus, with the enactment of § 9613(f)(2), "Congress specifically provided that contribution actions could not be maintained against settlors." *See United States v. Cannons Engineering Corp.*, 899 F.2d 79, 92 (1st Cir.1990). In *Cannons*, the First Circuit noted that Congress enacted § 9613(f)(2) "to encourage settlements and provide [potentially responsible parties] a measure of finality in return for their willingness to settle." *Id.* at 92; *see also United States v. Pretty Products*, 780 F.Supp. 1488, 1493 (S.D.Ohio 1991) (stating that the purpose of § 9613 is "to encourage

settlements and expedite the cleanup of hazardous waste sites."); H.R.Rep. No. 99–253, Part I., 90th Cong., 1st Sess. 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862. The First Circuit also noted that "Congress plainly intended non-settlors to have no contribution rights against settlors regarding matters addressed in settlement. *Cannons*, 899 F.2d at 92; *see also AZKO Coatings, Inc. v. Aigner Corp.*, 803 F.Supp. 1380, 1383 (N.D.Ind.1992) (stating that § 9613(f)(2) "insulates a potentially liable party who has settled a CERCLA action from liability to a potentially responsible party who has not settled.").

■ Under § 9613(f)(2), there are three elements which are needed in order to bar Timken's counterclaim for contribution under § 9613(f)(1) against Crown Cork and Clark. First, Crown Cork and Clark must have resolved its liability to the United States or a State. Second, the resolution of that liability must have been in an administrative or judicially approved settlement. Third, Timken's claims for contribution must regard matters addressed in the settlement between Crown Cork and Clark and the United States. In applying these requirements under § 9613(f)(2), it is clear that Timken's request for contribution under § 9613(f)(1) is barred.

■ First, on December 5, 1989, Crown Cork and Clark entered into a Consent Decree with the United States, resolving their liability to the United States for certain "Covered Response Costs" incurred at the Macon and Dockery sites. Second, this Consent Decree was judicially approved by this Court on December 5, 1989. Third, it appears that Timken's claims for contribution regard "matters addressed in the settlement." In determining whether a particular claim regards matters addressed in the settlement, a court should consider the particular hazardous substance at issue in the settlement, the location or site in question, the time frame covered by the settlement, and

---

2. In its answer to Crown Cork and Clark's amended complaint, Timken denies liability. Alternatively, Timken contends that, if liable, "each of the plaintiffs is liable to defendant Timken for contribution" under 42 U.S.C. § 9613(f)(1). In addition, Timken alleges a common law right to

contribution and indemnity from each Plaintiff for "any amounts adjudged against defendant Timken." These counterclaims are not the subject of Crown Cork and Clark's motion to dismiss currently before the Court.

the cost of the cleanup. *See United States v. Union Gas Co.,* 743 F.Supp. 1144, 1154 (E.D.Pa.1990); *see also Pretty Products,* 780 F.Supp. at 1494–95 n. 4. In this case, Timken's counterclaims to the original complaint and the Consent Decree between Plaintiffs and the United States address similar hazardous substances and sites. In addition, Timken's counterclaims seek recovery of all damages, costs, response costs, and all other relief sought in the original complaint. In the original complaint, Crown Cork and Clark sought contribution for the monies they paid to the United States in the December 5, 1989 Consent Decree. Specifically, Crown Cork and Clark each sought recovery of the $600,000 in "Covered Response Costs" they paid pursuant to the Consent Decree as well as interest, costs, and attorney's fees. Under the Consent Decree, "Covered Response Costs" were defined to include:

> all costs of response including but not limited to, administrative, investigative, removal, remedial, access, enforcement (including attorneys' fees), and oversight costs, prejudgment interest on any and all such costs, and all other direct or indirect costs, however denominated, alleged to have been incurred by the United States pursuant to CERCLA, the Clean Water Act or any other federal or state statute, rule or regulation up to and including the Date of Entry of this Consent Decree in connection with the Macon and Dockery sites.

Thus, it appears that Timken's claim for contribution seeks recovery for the identical damages that Crown Cork and Clark have already paid to the United States. As a result, Timken's first counterclaim, seeking contribution under 9613(f)(1), regards "matters addressed in the settlement." Therefore, the first Timken counterclaim raised in its answer to Crown Cork and Clark's original complaint may be dismissed in its entire-

ty. *See Pretty Products,* 780 F.Supp. at 1495 n. 4.

■ Similarly, Timken's counterclaim seeking common law contribution and indemnity from Crown Cork and Clark is also barred by CERCLA. First, several courts have determined § 9613(f)(2) bars common law and state law claims for contribution. *See AZKO Coatings,* 803 F.Supp. at 1387–88; *see also Pretty Products,* 780 F.Supp. at 1494.[3] In addition, courts have similarly determined that § 9613(f)(2) can bar certain indemnity claims against settling parties. *See Cannons,* 899 F.2d at 92–93; *Pretty Products,* 780 F.Supp. at 1495–96. In *Cannons,* the court stated that "[a]lthough CERCLA is silent regarding indemnification, we refuse to read into the statute a right to indemnification that would eviscerate § 9613(f)(2) and allow non-settlors an end run around the statutory scheme." *Cannons,* 899 F.2d at 92. In *Cannons,* the court noted that appellants alleged no contractual basis for indemnification. Such a noncontractual indemnity claim was, in effect, a more extreme form of a contribution claim. *Id.* The court concluded that "if appellants' claims for partial contribution can validly be barred in the course of implementing a CERCLA settlement, ... their claims for total contribution, i.e. indemnity, can likewise be foreclosed." *Id.* at 92–93; *see also Pretty Products,* 780 F.Supp. at 1495–96. In this case, Timken has not alleged a contractual basis for indemnification against Crown Cork or Clark. As a result, its counterclaim for indemnification is, in reality, a claim for total contribution. Therefore, § 9613(f)(2) bars the "indemnification" claim.

### ORDER

For reasons stated in the memorandum opinion filed contemporaneously herewith, IT IS ORDERED that pursuant to Federal Rule of Civil Procedure 12(b)(6), Crown Cork and Clark's joint motion to dismiss Timken's

---

3. In holding that § 9613(f)(2) bars state law contribution claims, the *Pretty Products* court noted: [i]f this Court were to allow the state law claims for contribution to remain, CERCLA's immunity for settling parties would be illusory, i.e. a stick with no carrot. Because it is clear that Congress enacted the SARA amendments to encourage quick settlements, Congress could not possibly have intended to allow non-settling parties to negate CERCLA's settlement incentive through the use of state contribution claims.
*Pretty Products,* 780 F.Supp. at 1494 n. 3.

counterclaims to the original complaint is GRANTED.